**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                :

In re:                              :          Chapter 11

                              :

        Steven J. Ancona,             :          Case No. 14-10532-CGM

                              :

                        Debtor.     :

                              :

---------------------------------------------------------------X

**MEMORANDUM DECISION DENYING
DEBTOR'S MOTION FOR REARGUMENT**

A P P E A R A N C E S :

ROSENBERG & ESTIS, P.C.
*Special Counsel to the Debtor*
733 Third Avenue
New York, New York 10017
By:    Howard W. Kingsley, Esq.

McLAUGHLIN & STERN, LLP
*Attorneys for 3 West 16th Street, LLC*
260 Madison Avenue
New York, New York 10016
By:    Matthew D. Sobolewski, Esq.
       Chester R. Ostrowski, Esq.

**CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE**

Debtor, by his special counsel, filed a Motion for Reargument of this Court's

Memorandum Decision on Debtor's Motion for Summary Judgment and Order Denying in Part

and Granting in Part Debtor's Motion for Summary Judgment, in connection with the Debtor's

objection to the Landlord's Amended Claim.[1]  For the reasons that follow, the Court denies the

Motion for Reargument.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §

157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska

dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. §157(b)(2)(B) (allowance

or disallowance of claims against the estate).

## Background

The relevant background is set forth in the Memorandum Decision, familiarity with

which is assumed.  The Court summarizes only those facts necessary for the disposition of the

instant Motion for Reargument.

*Factual history*

The Landlord and Tenant, an entity owned and controlled by the Debtor, were parties to a

35-year triple-net Lease dated March 24, 2006, for the Building located at 3 West 16th Street.[2]

Under the Lease, the Tenant agreed to pay base rent (computed using a formula set forth in

Exhibit B to the Lease), and agreed that all charges other than base rent, including damages,

would be deemed "Additional Rent" or "additional rent."  The Tenant also agreed to "cause the

Construction of the Pre-Approved Alterations to be Completed with diligence and continuity…"

which construction would be funded by the Landlord, up to $2,850,000.[3]  On the same date,

---

[1]    *See* Motion for Reargument (ECF No. 190), Memorandum Decision (ECF No. 184) and Summary
Judgment Order (ECF No. 185).  Capitalized terms not defined herein shall have the meanings ascribed to them in
the Memorandum Decision.

[2]    For brevity, citations for the undisputed facts are omitted, unless a fact was not previously discussed in the
Memorandum Decision.

[3]    This provision reflected the parties' original intent to convert and build out the upper floors of the Building
for sale as luxury condominium units.

March 24, 2006, the Debtor entered into a Guaranty, wherein the Debtor agreed to guarantee the

"full and punctual payment, when due, whether at the stated due date, by acceleration or

otherwise of forty-five percent (45%) of the obligations of the [Tenant] under the Lease… [and]

indemnify the [Landlord] from and against forty-five percent (45%) of all monetary losses

associated with the [Landlord's] ownership of the [Building], other than consequential losses."

The parties subsequently had a falling out and the Tenant did not complete construction

of the Building for condominium sales.  Under the terms of the Lease, rent became due starting

January 2008.  The Tenant paid the rent for January, February and March 2008, but stopped

making payments thereafter, and the Landlord terminated the Lease effective June 7, 2008.  By

then the parties were embroiled in a State Court Action over the Lease and Guaranty, as well as

over title and possessory interests in the Building, which litigation also involved the two

Synagogues that were occupying the lower floors of the Building.[4]  Pursuant to a formal

eviction, the Landlord gained full possession of the Building on January 22, 2013.

*Procedural history*

In the Debtor's Chapter 11 proceeding, the Landlord filed an Initial Claim for

$6,831,929.46 for damages arising from the Debtor's Guaranty and the Tenant's breach of the

Lease.  The Landlord then filed an Amended Claim in the amount of $20,561,342 at the direction

of the Court at a pre-summary-judgment-motion conference.[5]  On September 4, 2015, the Debtor

---

[4]     The history behind the Synagogues' relationship with the Debtor and the Building is set forth in further detail in the Memorandum Decision.  It is sufficient, for purposes of this motion, to note that the Synagogues had ties to the Debtor and were involved in the State Court Action.

[5]     Local Bankruptcy Rule 7056-1(a) states that:  "Unless the Court orders otherwise, no party shall file a motion for summary judgment without first seeking a pre-motion conference. The request for a pre-motion conference shall be made by letter, filed with the Court, on the docket of the case, and served on all other parties setting forth the issues to be presented in the motion and the grounds for relief. Unless the Court otherwise directs, the letter shall not exceed two pages in length."  LBR 7056-1(a).

filed its Motion for Summary Judgment, seeking, principally, expungement of the Amended

Claim, and judicial determination of ten enumerated issues, as follows:

     a.       Does the statutory cap apply to a debtor that personally guaranteed a non-residential lease?

     b.       Did the Landlord improperly inflate the monthly amount of Base Rent?

     c.       Can the Landlord hold the Debtor liable for use and occupancy charges?

     d.       Is the Landlord entitled to recover real estate taxes and insurances charges due after the Lease was terminated?

     e.       Is the Landlord entitled to late fees?

     f.       Is the Landlord entitled to 100% of all attorneys' fees?

     g.       Is the Landlord required to reduce its damages by all rents it has received and will receive in the future?

     h.       Has the Landlord suffered any actual damages?

     i.       Should the Amended Claim be reduced to zero and expunged because, *inter alia*, it was filed in bad faith?

*See* Summary Judgment Motion at 2-3 (ECF No. 145). In response, the Landlord filed an

Opposition to Summary Judgment, which was followed by the Debtor's Reply Further Support

of Summary Judgment. *See* Landlord's SJ Opp. (ECF No. 149), Debtor's Further Reply (ECF

No. 171). The Court held oral arguments on the Summary Judgment Motion on February 25,

2016, and shortly thereafter, issued the Memorandum Decision and Summary Judgment Order.

The Memorandum Decision partly granted and partly denied the Debtor's Summary

Judgment Motion—specifically, that: (i) the statutory cap under section 502(b)(6) of the

Bankruptcy Code applied to the Landlord's claim against the Debtor as guarantor of the Tenant's

obligations under the Lease; (ii) issues of disputed material facts existed to preclude summary

judgment of the various components of the Landlord's Amended Claim; (iii) any mitigation of

damages from replacement tenants would reduce the Landlord's damages before application of

the section 502(b)(6) cap, but supplemental briefing by the parties was required as to the

calculation of such mitigation under New York state law; (iv) summary judgment that the

Landlord has not suffered any actual damages as a matter of law must be denied; and (v) the

Amended Claim would not be disallowed and expunged in its entirety as having been filed in bad

faith.  *See* Memorandum Decision at pp. 13, 18, 21-23.

On March 16, 2016, the Debtor filed the Motion for Reargument pursuant to Federal Rule

of Bankruptcy Procedure 9023 and Local Bankruptcy Rule 9023-1, seeking reargument of the

Court's Memorandum Decision and Summary Judgment Order.  In particular, the Debtor wants

this Court to determine that the Landlord is not entitled, as a matter of law, to claim the late fees,

construction costs and attorneys' fees that were not included as part of the Landlord's Base Rent

(collectively, the "Three Components") in the Amended Claim.  *See* Motion for Reargument.

The Debtor contends that reargument should be granted because the Court "overlooked" the

Debtor's argument that the Three Components of rent cannot be allowed under the "controlling"[6]

case of *Kuske v. McSheridan (In re McSheridan)*, 184 B.R. 91 (B.A.P. 9th Cir. 1995).  *Id.* ¶ 13.

The Debtor then reiterates his prior arguments that application of the *McSheridan* test bars the

Three Components with references to the relevant sections of the Summary Judgment Motion

and the Debtor's Further Reply.  *Id.* ¶¶ 23-33.

The Landlord objects to the Debtor's Motion for Reargument, filing in response, a

Memorandum of Law in Opposition to Debtor's Motion for Reargument on March 31, 2016.

---

[6]    The Debtor has cited no authority or case law as to why the Ninth Circuit Bankruptcy Appellate Panel's
*McSheridan* decision controls this Court.  *Compare In re 400 Madison Ave. Ltd. P'ship*, 213 B.R. 888, 890 n.2
(Bankr. S.D.N.Y. 1997) ("[I]n this district, which has both a multi-judge bankruptcy court and a multi-judge district
court, only decisions of the Second Circuit Court of Appeals are controlling"); *accord In re Filene's Basement, LLC*,
No. 11-13511, 2015 Bankr. LEXIS 1350, at *26 (Bankr. Del. Apr. 16, 2015) (finding the Ninth Circuit Court of
Appeals's reasoning in *Saddleback Valley Community Church v. El Toro Materials Co. (In re El Toro Materials
Co.)*, 504 F.3d 978 (9th Cir. 2007), which partly overruled *McSheridan*, to be "persuasive").

*See* Landlord's Reargument Opp. (ECF No. 192).  According to the Landlord, the Debtor

essentially rehashes "arguments that were made, considered, and rejected" in the Summary

Judgment Motion, and has not met the reargument standard that the Court overlooked any

controlling decision.  *Id.* at 1, 3-5.  The Landlord also argues that the Motion should be denied

because the Debtor has failed to demonstrate that reargument is necessary to prevent manifest

injustice.  *Id.* at 6-8.

As discussed below, the Debtor has failed to show that reargument based on the Court's

purported oversight of *McSheridan* is warranted, and the Motion for Reargument is denied.

### Discussion

*Standards Governing Reargument*

Under well known principles, motions for reargument are governed by Federal Rule of

Bankruptcy Procedure 9023, which makes Federal Rule of Civil Procedure 59 applicable to

bankruptcy cases.  Thus, motions for reargument are subject to the same standards as motions to

alter or amend judgments under Federal Rule of Civil Procedure 59(e).  *See In re Best

Payphones, Inc.*, No. 01-15472, 2016 WL 164900, at *8 (Bankr. S.D.N.Y. Jan. 13, 2016) (slip

copy) (citing *In re Bressler*, No. 06-11897, 2007 WL 951661, at *1 (Bankr. S.D.N.Y. Mar. 27,

2007)); *In re Jamesway Corp.*, 203 B.R. 543, 545-46 (Bankr. S.D.N.Y. 1996) ("a motion for

'reargument' is properly in the nature of a motion for a new trial or for the amendment of a

judgment pursuant to Fed. R. Civ. P. 59") (citing 9 *Collier on Bankruptcy* ¶ 9023.05 at pp. 9023-

6-7 (15th ed. 1996)).  To establish grounds for reargument, a movant must show that "the court

overlooked controlling decisions or factual matters 'that might materially have influenced its

earlier decision.'"  *In re Asia Global Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005);

*see also Koplik v. Siegel (In re Perry H. Koplik & Sons, Inc.)*, No. 04-2490, 2007 WL 3076921,

at *4 (Bankr. S.D.N.Y. Oct. 18, 2007) ("The moving party must point to previously advanced data or controlling decisions that the court overlooked that might reasonably be expected to alter its conclusion.") (citing *Key Mech., Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 123 (2d Cir. 2003)).

"The rule permitting reargument is strictly construed to avoid repetitive arguments on issues the court has already fully considered." *In re Best Payphones, Inc.*, No. 01-15472, 2008 WL 2705472, at *3 (Bankr. S.D.N.Y. July 3, 2008) (citing *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999); *accord Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988); *cf. In re Lamberti*, No. 06-35218, 2006 WL 2583303, at *2 (Bankr. S.D.N.Y. Aug. 16, 2006) ("Motions for reconsideration are disfavored, because complete disposition of discrete issues and claims is often essential to effective case management.") (internal quotations and citations omitted). Further, the movant may not advance new facts or arguments, as a motion for reargument is not a vehicle for taking a second bite at the apple. *See Best Payphones*, 2008 WL 2705472, *2 (quotation marks and citations omitted). "The decision to grant or deny reargument lies within the sound discretion of the court." *Best Payphones*, 2016 WL 164900, *9 (citing *Reich v. Lopez*, No. 13-CV-5307, 2015 WL 1632332, at *1 (S.D.N.Y. Apr. 13, 2015)).

Motions for reargument in this district are also governed by Local Bankruptcy Rule 9023-1, which states in relevant part:

> A motion for reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment.... The motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered. *No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be re-argued orally.*

LBR 9023-1(a) (emphasis added).  Here, while the Debtor timely filed the Motion for

Reargument within the prescribed period and noticed a return date of April 7, 2016, the Court

concludes, after reviewing the Motion for Reargument, that a hearing for oral arguments is

unnecessary as the Debtor merely repeats (literally) the arguments as to the Three Components

that were already presented in the Summary Judgment Motion.

*Reargument of the Three Components under McSheridan*

      As noted above, the Debtor's basis for reargument is that the Court overlooked the

Debtor's arguments that the Three Components are barred under the *McSheridan* test.

According to the Debtor, "[h]ad the Court considered such controlling legal principles based

upon the *undisputed* facts... the controlling law should have materially influenced the Court's

Decision to *not require a trial* on the Three Components."  Motion for Reargument ¶ 14

(emphasis added).  The fallacy of this argument is two-fold:  (i) contrary to the Debtor's

assumption, there were material *disputed* facts, making summary judgment as a matter of law as

to the various components of Landlord's claim (including the Three Components) inappropriate;

and (ii) the Court did not overlook *McSheridan*; rather, the Court's consideration of *McSheridan*

and the relevant legal principles influenced its conclusion that a trial was necessary as to the

components of the Landlord's Amended Claim, including the Three Components.

      In *McSheridan*, the Ninth Circuit Bankruptcy Appellate Panel established a three-part test

that "must be met for a charge to constitute 'rent reserved' under § 502(b)(6)(A):

1)     The charge must: (a) be designated as 'rent' or 'additional rent' in the lease; or (b) be provided as the tenant/lessee's obligation in the lease;

2)     The charge must be related to the value of the property or the lease thereon; and

3)     [T]he charge must be properly classifiable as rent because it is a fixed, regular or periodic charge."

*McSheridan*, 184 B.R. 91, 100 (B.A.P. 9th Cir. 1995).  The *McSheridan* court went on to say:

> [T]he evidence showed that both parties intended to enter into a triple-net lease
> and that Lease would be obligated to make the other payments in exchange for
> reduced rent.  Thus, some of the charges may have been related to the value of the
> property or the lease.  Furthermore, some of the charges might have been fixed
> and payable in a regular, periodic fashion like the regular rent.   These
> determinations are for the bankruptcy court to make.

*Id.*  The case was remanded back to the bankruptcy court to "conduct further proceedings"
consistent with the disposition.  *Id.*  The Bankruptcy Appellate Panel did not find that "non-rent"
charges under a lease, such as the CAM, taxes and utilities at issue there, (or, as here, late fees,
construction costs and attorneys' fees) cannot constitute rent under the test as a matter of law.

The Court is well aware of cases since *McSheridan* that have adopted the three-prong
test, to varying degrees, in analyzing landlord claims in the context of the section 502(b)(6) cap.
And the Debtor urges the Court to follow in the examples of *Andover Togs* and *Rock & Republic*
from this court in applying the *McSheridan* test to the Three Components.[7]  However, neither
*Andover Togs* nor *Rock & Republic* was decided on summary judgment.  In *Andover Togs*, the
debtor objected to the landlord's claims based on a number of issues—including, as relevant
here, whether construction costs and other "non-rent" charges can be properly included in the
landlord's claim.  *See In re Andover Togs*, 231 B.R. 521, 537-541 (Bankr. S.D.N.Y. 1999).  Then
Chief Judge Tina Brozman conducted a multi-day trial involving expert testimony over six
months before issuing, a year and a half later, its opinion granting in part and denying in part the

---

[7]   The Debtor states in the Motion for Reargument:  "Having determined that the statutory Cap applies to
'rent,' the well-established *McSheridan* test, which has been adopted by this Court (*In re Episode US, Inc.*, 202 B.R.
691 (Bankr. Ct. S.D.N.Y. 1996); *In re Andover Togs*, 231 B.R. 521 (Bankr. S.D.N.Y. 1999); *In re Rock and
Republic Enters., Inc.*, 2011 WL 2471000 (Bankr. S.D.N.Y.)), the Court should have applied the test to each of the
Three Components of rent as Debtor had argued throughout the SJ Motion."  Motion for Reargument ¶ 10.

   The Debtor is mistaken in citing *Episode USA* as having adopted the *McSheridan* test.  In *Episode USA*, the
issues before the court was (i) whether section 502(b)(6) applied to cap the landlord's claim against a debtor under a
guaranty, (ii) the administrative priority status of the landlord's claim, and (iii) mitigation of the landlord's damages
for future rent.  *See In re Episode USA, Inc.*, 202 B.R. at 695-97.  Aside from a single reference to *McSheridan* in a
string citation, the court in *Episode USA* did not mention *McSheridan* at all, let alone apply the test.

debtor's objection.[8]  Similarly, in *Rock & Republic*, the debtor objected to the claim a landlord,

seeking to expunge or estimate such claim at zero.  *Rock & Republic*, 2011 WL 2471000, at *6.

One of the issues in the objection was the landlord's entitlement to additional damages for,

among other things, tenant build out costs and legal fees.  *Id.* at *22-26.  There, the court

conducted a three-day trial on the issues in the objection and issued an opinion denying the

debtor's objection six months later.  *Id.* at *1.

As these cases demonstrate, application of the *McSheridan* test does not mean that lease

charges such as late fees, attorneys' fees and construction costs can never be recovered as a

matter of law at the summary judgment stage.  Instead, such determination should be made based

upon a review of the underlying evidence, which can often require a trial depending on the facts

and circumstances of the case.  *See also In re Energy Conversion* Devices*, Inc.*, 483 B.R. 119,

125-26 (Bankr. E.D. Mich. 2012) (denying trustee's motion to disallow landlord's entire claim,

then concluding that further development of the record, "after discovery and further

proceedings" was needed before the bankruptcy court could rule "on the numerous particular

items that make up the 'Additional Damages Claim' component" of the landlord's claim).  Here,

the Court denied summary judgment on the individual components of the Landlord's Amended

Claim because the Landlord raised material facts as to certain ambiguities in the operative

agreements, as well as disputes over the documentary evidence in support of such components.

Even aside from the ambiguous language and disputed facts noted in the Summary Judgment

Decision, the Court still concludes that further findings of fact following an evidentiary trial is

necessary for a determination as to the allowance (or disallowance) of the Three Components,

each of which is addressed below.

---

[8]     The length of the trial was not specifically noted in the *Andover Togs* opinion, but this Court counted
citations to the transcripts of six different trial dates.

(i)      <u>*Late Fees*</u>

The Debtor's argument that the Landlord is not entitled to late fees is nothing more than a tautological recitation of the *McSheridan* test:  "All of these late charges must be disallowed because, applying the *McSheridan* test, late fees are 'rent' [*sic*] since they are not related to the value of the Building and are not a fixed, regular or periodic charge."  Motion for Reargument ¶ 23 (citing Summary Judgment Motion at 21).  No further explanation or reference to any undisputed fact is provided as to how or why the late fees do not satisfy the *McSheridan* test.

The Amended Claim shows multiple categories of late fees—late fees were assessed on base rent, real estate taxes, property insurance, attorneys' fees and construction costs.  While it is highly unlikely that late fees on attorneys' fees and construction costs are related to the value of the Lease or the Building, and assessed on a periodic or regular basis, the same may not be true of late fees on base rent, real estate taxes and property insurance.  Since late fees tend to be based upon a percentage of the underlying charge, and charges for base rent, real estate taxes and property insurance are all clearly related to the value of the Lease or Building, such late fees are arguably also related to the value of the Lease or Building.   Base rent, real estate taxes and property insurance are also typically assessed in fixed, regular intervals.  And non-payment of such charges usually result in late fees being assessed in the same fixed, regular interval until such non-payment is cured.  However, the Court does not have sufficient evidentiary facts at the summary judgment stage on how all of these late fees were calculated and assessed, and thus, is unable to determine whether the last two prongs of the *McSheridan* test can be satisfied.  As such, the Debtor's reargument that *all* of the Landlord's late fees must be disallowed as a matter of law is denied.

*(ii)*     <u>*Legal Fees*</u>

Similar to the late fees component, the Debtor objects to the inclusion of attorneys' fees

*in toto*, arguing that all these fees are disallowed "because, under the *McSheridan* test, attorneys'

fees are not 'rent' for the purposes of § 502(b)(6), as it is not related to the value of the Building

and is not a fixed, regular or periodic charge."[9]   Motion for Reargument ¶ 26 (citing Summary

Judgment Motion at 22).   As noted by the Debtor, the Amended Claim does not sort the legal

fees into pre- and post- eviction amounts, nor categorize the fees by the legal proceeding or

matters to which they relate.   Instead, the attorneys' fees are asserted in a lump sum of

$1.7 million representing amounts owed for legal services rendered by two law firms from 2006

to 2015.   *See* Amended Claim ¶¶ 102-04.

Determination of the Landlord's entitlement to legal fees is not simply a formulaic,

conclusory application of the *McSheridan* test.   In *Rock & Republic*, the bankruptcy court, in

analyzing the attorneys' fee component of landlord's claim, distinguished between those legal

fees subject to the *McSheridan* test, and those that are capped under section 502(b)(6) as

damages not resulting from lease termination:

> The Court agrees with R&R that to the extent interest and attorneys' fees are
> covered by section 502(b)(6) of the Bankruptcy Code, they should be disallowed
> under the *McSheridan* test. … However, the Court also concurs with the position
> taken by the Debtors and the Committee that prepetition interest and attorneys'
> fees related to the litigation in the State Court Action do not constitute damages
> resulting from the "termination" of the Lease Agreements.

*Rock & Republic*, 2011 WL 2471000, \*24-25 (citations omitted).   The court then went on to

allow recovery of the landlord's prepetition interest and attorneys' fees that fit under the

---

9       The Debtor also argued in the Summary Judgment Motion that the Landlord's legal fees should be barred
because (i) the Landlord had changed its classification of legal fees from the Initial Claim, and failed to provide
"any basis in the Amended [Claim] to segregate and decipher the claim," and (ii) the "billing parties are not the
Landlord."  Summary Judgment Motion at 22.  The Court does not address these other contentions as they have not
been raised in the Debtor's Motion for Reargument.

definition of allowable expenses, and post-petition attorneys' fees that related solely to the parties' state court action. *Id.*

Likewise, the Eighth Circuit Bankruptcy Appellate Panel in *Lariat v. Wigley (In re Wigley)*, 533 B.R. 267, 272 (8th Cir. B.A.P. 2015), in addressing landlord's claims for attorneys' fees, costs and disbursements, noted the different treatment between fees that accrued before the lease terminated and those that were post-termination. In granting recovery of the landlord's legal fees that were awarded in the state court litigation, the court in *Wigley* stated:

> Because the damages comprising the first element of [landlord's] claim (unpaid rent, common area maintenance and late fees) accrued prior to termination of the lease and thus cannot be said to have resulted from termination of the lease, the related attorneys fees, costs and disbursements—and the prepetition interest thereon—likewise cannot be said to have resulted from termination of the lease. [Landlord's] claim for these attorneys fees, costs, and disbursements—and the pre-petition interest thereon—is thus not subject to § 502(b)(6)'s cap.

*Id.* (internal citations omitted).

In this case, certain of the Landlord's legal fees might be allowable to the extent that such fees do not result from termination of the Lease and hence, do not fall under section 502(b)(6)'s cap. The attorneys' fees claimed date back to 2006, and includes legal services rendered in connection with the Landlord's acquisition of the Building and the negotiation and entry into the Lease and Guaranty, which clearly do not result from the termination of the Lease. The asserted legal fees also includes amounts incurred in connection with the State Court Action, which action was brought by the Tenant and Synagogues against the Landlord before the Lease was terminated.[10] But the Court needs a more developed factual record as to the nature of these fees and the specific legal matters they pertain to, in order to employ a proper analysis. A wholesale bar of all of the Landlord's legal fees as a matter of law under the guise of applying *McSheridan*

---

[10]    The verified complaint in the State Court Action was filed on February 26, 2008. *See* Amended POC ¶ 49.

will not do.  Thus, summary judgment would have been premature, and reargument as to this

component is likewise denied.

>   *(iii)*     *Construction Costs*

The Landlord included approximately $1.2 million in construction costs from 2006 to

2015 as part of the Amended Claim.  As with the other two components, the Debtor reargues that

such costs cannot be allowed under the *McSheridan* test.  The issue, however, is not whether

these construction costs can satisfy the 3-prongs of the *McSheridan* test, but whether *McSheridan*

is triggered at all.  The Landlord argues in his Opposition to Summary Judgment that the

statutory cap does not apply to construction costs, citing the Ninth's Circuit's decision in

*Saddleback Valley Community Church v. El Toro Materials Co. (In re El Toro Materials Co.)*,

504 F.3d 978 (9th Cir. 2007).  In *El Toro*, the Ninth Circuit partly overruled *McSheridan* and

articulated a more narrow reading of section 502(b)(6), stating:

> Landlords in future cases may have significant claims for both lost rental income
> and for breach of other provisions of the lease. To limit their recovery for
> collateral damages only to a portion of their lost rent would leave landlords in a
> materially worse position than other creditors. In contrast, capping rent claims but
> allowing uncapped claims for collateral damage to the rented premises will follow
> congressional intent by preventing a potentially overwhelming claim for lost rent
> from draining the estate, while putting landlords on equal footing with other
> creditors for their collateral claims.

*Id.* at 980.  While the facts in *El Toro* dealt with a landlord's collateral tort claim against

the debtor, its principles have been extended to other claims for collateral damage, or

damages that do not directly arise as a result of a lease's termination or rejection.  For

example, the Delaware Bankruptcy Court in *In re Filene's Basement, LLC*, No. 11-

13511, 2015 Bankr. LEXIS 1350, at *32 (Bankr. Del. Apr. 16, 2015) held that a

mechanic's lien, which was included by the landlord as a component of its "additional

claims," existed independently of the lease termination, and was thus not subject to the

statutory cap.  In reviewing the additional claims, Judge Kevin Carey stated:

> I find the reasoning of the Court of Appeals in *El Toro* persuasive and agree with
> the more narrow interpretation of § 502(b)(6).  The statute does not prevent a
> landlord from asserting a separate claim for damages that do not directly arise
> from termination of the lease. … Therefore, the initial question is not whether the
> Abandonment Claim is rent, but whether the Abandonment Claim results from the
> termination of the Lease.

*Id.* at 26-28.  The court also went on to discuss a similar "Additional Damages" claim in *Energy*

*Conversion*, 483 B.R. at 125.

Judge Sean Lane of this court also adopted *El Toro's* reasoning in the *Rock & Republic*

bankruptcy.  *Rock & Republic*, 2011 WL 2471000, at *22.  There, the landlord's asserted a claim

for "additional damages," which included, as relevant here, a component for tenant buildout

costs.  *Id.* at 22-23.  While the court ultimately disallowed the tenant buildout costs, the court's

conclusion rested, not on finding that such costs fell within the purview of section 502(b)(6), but

on the trial testimony, which demonstrated that tenant buildout costs are speculative as they

depended on the "wishes and designs of whatever future tenant would next occupy" the leased

premises.  *Id.*

Similarly, the only other case from this court that has addressed construction costs post-

*McSheridan*, *In re Andover Togs*, 231 B.R. 521 (Bankr. S.D.N.Y. 1999), also looked to the

evidentiary record in allowing recovery.  In *Andover Togs*, the debtor objected to the landlord's

inclusion of tenant installments as part of its claim—arguing, not that *McSheridan* was

applicable to bar such costs as rent, but that "the new tenant improvements were improperly and

unreasonably inflated because [landlord] completely demolished the space."  *Id.* at 537.  The

court rejected the debtor's argument, finding that, based upon the expert's trial testimony, the

landlord "acted reasonably" in gutting the space, and permitted the tenant improvement costs. *Id.* at 538-39.

In the case at bar, the Court has only a limited evidentiary record at this point to evaluate the extent to which the Landlord's construction costs resulted from termination of the Lease, which should be decided as threshold matter, before reaching the *McSheridan* test. As described by the Landlord, such costs include both disbursements from the Tenant's pre-eviction failure to complete the construction, as well as post-eviction disbursements after the Landlord regained full possession. Further, the Court has no basis for ascertaining whether the costs were reasonable or necessary as part of the Landlord's reletting efforts. There are also disputed facts over who was at fault for the failed renovation, with the Landlord alleging that the Debtor had misused the alteration funds and then tried prevent the Landlord from finishing the construction. The Debtor himself concedes that only limited discovery has been taken so far on these construction costs.

Accordingly, the Court denies reargument. The denial of summary judgment disallowing construction costs stands.

## Conclusion

For the foregoing reasons, the Court denies the Motion for Reargument. The Debtor is to submit an order consistent with this opinion.

/s/ Cecelia G. Morris

**Dated: April 6, 2016**
      **Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**