Matthew D. Sobolewski, Esq.
Chester R. Ostrowski, Esq.
**McLAUGHLIN & STERN, LLP**
*Attorneys for 3 West 16th Street, LLC*
260 Madison Avenue
New York, New York 10016
(212) 448-1100

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :    Chapter 11
                                              :
STEVEN J. ANCONA,                             :    Case No. 14-10532 (MKV)
                                              :
                    Debtor.                   :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**3 WEST 16th STREET LLC'S SUPPLEMENTAL BRIEF ON**
**MITIGATION OF DAMAGES UNDER NEW YORK LAW**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL ARGUMENT ........................................................................................................... 2

    I.      DEBTOR'S POSITION IS CONTRARY TO NEW YORK LAW ....................... 2

    II.     DEBTOR'S RELIANCE ON THE "EQUITABLE PRINCIPLES"
           OF BANKRUPTCY LAW IS MISPLACED IN THIS CONTEXT ..................... 4

    III.    THE LEASE AND GUARANTY SUPPORT LANDLORD'S
           POSITION REGARDING MITIGATION OF DAMAGES ................................ 6

    IV.   IN ANY EVENT, THE COURT SOULD REJECT DEBTOR'S
           ATTEMPT TO CALCULATE LANDLORD'S DAMAGES
           AFTER MITIGATION ........................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**

*172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc.*,
 24 N.Y.3d 528, 2 N.Y.S.3d 39 (2014). .................................................................. 5, 6

*Am. Transtech Inc. v. U.S. Trust Corp.*, 933 F. Supp. 1193 (S.D.N.Y. 1996). ............................... 3

*Bibeau v. Ward*, 228 A.D.2d 943, 645 N.Y.S.2d 107 (3d Dep't 1996). ...................................... 10

*Caesar v. Rubinson*, 174 N.Y. 492 (1903). ............................................................... 6 n.3

*D.H. Overmyer Co. v. Irving Trust Co. (In re D.H. Overmyer Co.)*,
 60 B.R. 391 (S.D.N.Y. 1986). ............................................................................... 5

*Holy Properties Ltd., L.P. v. Kenneth Cole Productions, Inc.*,
 87 N.Y.2d 130, 637 N.Y.S.2d 964 (1995). .......................................................... 3, 5-6, 6 n.3

*In re Andover Togs, Inc.*, 231 B.R. 521 (Bankr. S.D.N.Y. 1999). ........................................... 5, 10

*In re Crown Books Corp.*, 269 B.R. 12 (Bankr. D. Del. 2001). ............................................. 3, 4

*New 24 West 40th Street LLC v. XE Capital Management, LLC*,
 104 A.D.3d 513, 961 N.Y.S.2d 139 (1st Dep't 2013). ....................................................... 3

*Saddleback Valley Comm. Church v. El Toro Materials Co.
 (In re El Toro Materials Co.)*, 504 F.3d 978 (9th Cir. 2007). ............................................ 4

*White Plains Plaza Realty, Inc. v. Town Sports Int'l, LLC*, No. 02177/07,
 2009 WL 7401502 (Sup. Ct., Westchester Cty., Comm. Div. Feb. 2, 2009). ................................... 8

3 West 16th Street LLC ("3 West 16th Street" or "Landlord") respectfully submits this supplemental brief as directed by the Court in its Memorandum Decision on Debtor's Motion for Summary Judgment [CM/ECF Doc. 184] (the "MSJ Decision") and its Order Granting in Part and Denying in Part Debtor's Motion for Summary Judgment [CM/ECF Doc. 185] (the "MSJ Order").[1]

## PRELIMINARY STATEMENT

In the MSJ Order, the Court reserved decision on Debtor's request for "[s]ummary judgment that the Landlord is required to reduce its damages by all rents it has received and will receive in the future" and directed the parties to submit supplemental briefs "addressing the issue of mitigation of damages *under New York state law*, as more fully described in the [MSJ Decision]." *See* MSJ Order, pp. 2-3 (emphasis added). In the MSJ Decision, the Court, in turn, requested that the supplemental briefs address "[j]ust *how* damages are to be mitigated under New York law—such as whether all future rents a landlord will receive from new tenants (as proposed by the Debtor), or only rents actually received by a landlord (as proposed by the Landlord), and whether the future rents remaining under the relevant term must then be discounted to present value." *Id.* (emphasis in original). The Court further framed the issue to be determined as follows: "how Landlord's damages would be mitigated, *under New York law*, by the rents from the six new tenants at the Building, without regard to the application of the statutory cap under Section 502(b)(6)" (the "Statutory Cap"). *See id.* (emphasis in original).

In Debtor's Supplemental Brief in Further Support of His Motion for Summary Judgment [CM/ECF Doc. 193] ("Debtor's Brief"), Debtor virtually ignores *New York state law* and otherwise fails to properly address the narrow issue as to which the Court has sought additional guidance.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Landlord's Memorandum of Law in Opposition to Debtor's Motion for Summary Judgment in Connection with His Objections to the Amended Claim Asserted by 3 West 16th Street, LLC [CM/ECF Doc. 149] ("Landlord's MOL").

1

Instead, just as he did in his motion for reargument, Debtor rehashes the same arguments that he made in support of his summary judgment motion (the "Motion"), mischaracterizes the nature and contents of Landlord's opposition to the Motion, seeks to rely upon equitable principles of bankruptcy law instead of New York state law, and – ultimately – attempts an *actual calculation* of Landlord's damages after mitigation (which the Court never requested and which is, in any event, both premature and materially flawed).

The Court has already determined that "there are enough genuine issues of material fact at this time that require further findings by a trier of fact as to the various components included in Landlord's damages calculation . . . [that] summary judgment must be denied on these issues." *See* MSJ Decision, p. 18. Debtor has done nothing in his Supplemental Brief to warrant a different conclusion as to how Landlord's damages would be mitigated under New York state law. Accordingly, as set forth more fully below, the Court should deny the portion of Debtor's motion for summary judgment on which it previously reserved decision.

## LEGAL ARGUMENT

### I.    DEBTOR'S POSITION IS CONTRARY TO NEW YORK LAW

As Landlord previously argued in its opposition to the Motion, only amounts *actually received* by a landlord as a result of its mitigation efforts should be deducted from the landlord's damages claim. *See* Landlord's MOL, pp. 29-30. Nonetheless, to the extent any mitigation analysis must include *future rents*, which have not yet been received by Landlord, New York law dictates that it include only rent payments to be received under the New Leases that are currently in place. Stated differently, Debtor's argument that "all future rents that Landlord will receive *after the New Leases expire* must be taken into account to reduce Landlord's damages" is contrary to New York law and should, therefore, be rejected.

Although Debtor fails to acknowledge it in his Supplemental Brief, it is beyond dispute

2

that a commercial landlord has no duty to mitigate damages under New York law *See*, *e.g.*, *Holy Properties Ltd., L.P. v. Kenneth Cole Productions, Inc.*, 87 N.Y.2d 130, 133-34, 637 N.Y.S.2d 964, 966 (1995). Indeed, "[o]nce the lease is executed, the lessee's obligation to pay rent is fixed according to its terms and a landlord is under no obligation or duty to the tenant to relet or attempt to relet abandoned premises in order to minimize damages." *Id.* Based on the foregoing, Landlord would be well within its legal rights to allow the currently existing New Leases to expire and then seek to collect the entire amount of future rents due and owing under the original Lease from Tenant (and Debtor under the Guaranty).

Accordingly, it defies logic – and well-settled principles of New York law – for Debtor to argue that Landlord's mitigation efforts should be extrapolated to account for *purely hypothetical future rents that Landlord might theoretically receive if and only if it continues to mitigate after the New Leases expire (through accepting renewals and/or finding new tenants)*. *See id.*; *see also Am. Transtech Inc. v. U.S. Trust Corp.*, 933 F. Supp. 1193, 1199 (S.D.N.Y. 1996) (finding that "since there is no duty to mitigate damages in a commercial lease," the breaching tenant "could be liable for the entire term of the ten-year-lease"); *New 24 West 40th Street LLC v. XE Capital Management, LLC*, 104 A.D.3d 513, 514-15, 961 N.Y.S.2d 139, 141 (1st Dep't 2013) (recognizing that "landlord is under no legal duty to mitigate damages in the event of a material breach of lease by a commercial tenant" and rejecting tenant's argument that "the lease terms were unconscionable in that they would allow the landlord a windfall of all rent due" for the remainder of lease term).

Absolutely none of the cases cited by Debtor support the opposite conclusion. At best, the case principally relied upon by Debtor provides that "damages must be reduced by the increased rent [the landlord] will receive under the Replacement Leases." *See* Debtor's Brief, p. 2 (citing *In re Crown Books Corp.*, 291 B.R. 623, 626 (Bankr. Del. 2003)). Like the New Leases at issue here, however, the "Replacement Leases" in *Crown Books* were then-current, existing leases. *See id.*

3

In other words, nothing in *Crown Books* even remotely suggests that rents a landlord "will receive" under prospective future leases should be considered in any mitigation analysis. *See id.*

Perhaps more importantly, Debtor has provided no legitimate basis to assume – let alone any undisputed facts to establish – that the New Leases will be renewed or extended (through options or otherwise) by the current tenants or that Landlord will necessarily be able to obtain future tenants after the New Leases expire. Instead, Debtor relies on the wholly unsupported and self-serving assumption that Landlord will be able to "obtain another set of rents from future tenants, which will likely continue to increase into the future" because "rents in the extremely valuable real estate market of Manhattan increase over time." *See* Debtor's Brief, p. 2 & n.2.[2] The Motion certainly cannot be granted upon such a conclusory and speculative assumption.

II.     **DEBTOR'S RELIANCE ON THE "EQUITABLE PRINCIPLES" OF BANKRUPTCY LAW IS MISPLACED IN THIS CONTEXT**

As noted above, Debtor does virtually nothing in his Supplemental Brief to address the issue of mitigation under *New York law* as requested by the Court. Instead, Debtor rehashes bankruptcy law arguments that he has already made, including arguments based on the Statutory Cap. *See* Debtor's Brief, pp. 1-6. Moreover, Debtor relies almost exclusively on two bankruptcy cases – *i.e.*, *Crown Books* and *Saddleback Valley Comm. Church v. El Toro Materials Co. (In re El Toro Materials Co.)*, 504 F.3d 978 (9th Cir. 2007) – neither of which involved any consideration of New York law. *See* Debtor's Brief, pp. 2, 5.

---

[2]     Taken to its logical conclusion, Debtor's argument would mean that a commercial landlord in Manhattan would *never* have damages resulting from a tenant's early abandonment of a leased premises because such a landlord could *always* (at least, according to Debtor) find replacement tenants willing to pay rents higher than those which the breaching tenant originally agreed to pay. Conversely, such a rule would allow commercial tenants to breach their leases with impunity. Surely, this cannot be the case. Moreover, to the extent that Debtor still believes the increased value of the Building somehow negates the damages suffered by Landlord, he is clearly incorrect. Landlord would have been entitled to and benefited from any increase in the value of the Building whether or not Tenant breached the Lease and abandoned the Building prior to the expiration of the lease term. Thus, the value of the Building is simply irrelevant from a damages perspective. The focus in this case should be on Landlord's lost or diminished stream of rental income.

4

This Court, however, has already determined that bankruptcy law is *irrelevant* when it comes to the determination of mitigation and Landlord's overall damages claim, which must be calculated *before* and "*without regard to the application of the [Statutory Cap].*" MSJ Decision, p. 20 (emphasis added). Additionally, in her well-reasoned decision in *In re Andover Togs, Inc.*, 231 B.R. 521 (Bankr. S.D.N.Y. 1999), former Chief Judge Brozman explicitly rejected essentially the same argument made by Debtor here:

> Despite the holding in *Holy Properties* that a landlord of a New York commercial lease does not have a duty to the tenant to relet or attempt to relet an abandoned premises in order to minimize damages, [the tenant] urges that the equitable principles under the former Bankruptcy Act, as expressed in [*D.H. Overmyer Co. v. Irving Trust Co. (In re D.H. Overmyer Co.)*, 60 B.R. 391 (S.D.N.Y. 1986)] and the legislative history of section 502(b)(6), create a background upon which the Bankruptcy Code and section 502(b)(6) must be read. The argument continues that, in the bankruptcy arena, a landlord should be held to a duty to mitigate its damages to insure an equitable distribution to all unsecured creditors and prevent a windfall to the landlord. **[The tenant's] novel argument, however, is contrary to the state of the law in New York today, as harsh as this rule may be, that upon a commercial tenant's breach of a lease and failure to pay rent, the landlord has no duty to mitigate its damages. . . .** Moreover, the other creditors are already protected against unduly large claims by the [Statutory Cap].

*Id.* at 543-44 (citations omitted) (emphasis added).

The Court's decision in *172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc.*, 24 N.Y.3d 528, 2 N.Y.S.3d 39 (2014), which Debtor also cites, does nothing to change the analysis. In fact, in *172 Van Duzer Realty*, the Court rejected defendants' "challenge [to] the validity of the acceleration clause" contained in the parties' lease as an "unconscionable penalty," finding that acceleration clauses are generally enforceable against tenants "who [have] committed material breaches of the lease by ceasing all rental payments . . . and simultaneously abandoning the premises." *Id.* at 535. The Court in *172 Van Duzer Realty* further rejected defendants' argument that the landlord should be subject to a duty to mitigate since, among other things, the

parties "freely agreed to bind defendants to pay rent after termination of the landlord-tenant relationship." *Id.* (citing *Holy Properties*, 87 N.Y.S.2d at 134).[3]

Significantly, Landlord also does not argue, as Debtor improperly suggests, that Landlord's damages for future rent in this case should *not* be discounted to present-day value. *See* Debtor's Brief, pp. 5-6 (citing *172 Van Duzer Realty*, 24 N.Y.3d at 536-37). In fact, in Landlord's MOL (among other places), Landlord has argued that "to the extent the Court determines that mitigation should include rents to be received under the New Leases (versus just rent payments actually received), the proper economic or damages analysis *should include . . . a net present value calculation given the future time periods considered*." *See* Landlord's MOL, p. 31 (emphasis added). That said, Debtor has utterly failed to meet his burden on summary judgment to establish the appropriate discount rate the Court should use in making any net present value calculation. Indeed, as discussed below, Debtor's only attempt to establish the discount rate under current market conditions is based entirely on his misplaced reliance on Section 15.4(d) of the Lease. The proper discount rate and net present value calculation in this case will most likely involve a battle of the parties' respective experts.

### III. THE LEASE AND GUARANTY SUPPORT LANDLORD'S POSITION REGARDING MITIGATION OF DAMAGES

Debtor also incorrectly argues – based on his selective reading of the Lease – that the "liquidated damages" provisions set forth in Section 15.4(d) *necessarily* apply in this case "[s]ince

---

[3] *Caesar v. Rubinson*, 174 N.Y. 492 (1903), is similarly inapposite. Only if a landlord excuses its breaching tenant from its obligation to pay rent and additional rent until the end of its lease term does such an obligation cease. *See*, *e.g.*, *Holy Properties*, 87 N.Y.2d at 134 ("Although an eviction terminates the landlord-tenant relationship, the parties to a lease are not foreclosed from contracting as they please."). In this case, as in *Holy Properties*, the Lease expressly provided that Landlord was under no duty to mitigate and that, upon Tenant's abandonment of the Premises, Tenant would remain liable for all monetary obligations arising under the Lease. *See* Amended Proof of Claim dated July 10, 2015 ("APOC"), Ex. 1 (Lease, Section 15.4(b)) (providing that "Landlord shall in no way be responsible or liable for any failure to relet the Premises or any part thereof . . . and no such failure to relet . . . shall operate to relieve Tenant of any liability under this Lease or otherwise").

6

Landlord is seeking all rents/damages due under the Lease for the remainder of the Lease term."

*See* Debtor's Brief, pp. 2-3. The plain language of the Lease, however, does not require Landlord to proceed under a "liquidated damages" analysis; instead, it affords Landlord the *option* – in Landlord's sole discretion – to recover liquidated damages "on demand, in lieu of any further Deficiencies," as defined in Section 15.4(c). *See* APOC, Ex. 1 (Lease, Section 15.4). Since Debtor has not demonstrated undisputed material facts to establish that Landlord ever demanded liquidated damages (because no such facts exist), the provision of the Lease that applies with respect to the calculation of Landlord's damages is Section 15.4(c).

Pursuant to Section 15.4(c), if "Landlord shall have re-entered the Premises or any portion thereof and/or shall have dispossessed Tenant by summary proceedings or otherwise as provided in Section 15.3(b) . . . ," then:

> (c) Tenant shall be liable for and shall pay to Landlord as damages, any deficiency (the "Deficiency") between the Rental reserved in this Lease for the period which otherwise would have constituted the unexpired portion of the Term and the net amount, if any, of rents collected under any reletting effected pursuant to Section 15.4(b) hereof; any such Deficiency shall be paid by Tenant in installments on the days specified in this Lease for the payment of installments of Rental, and Landlord shall be entitled to recover from Tenant such Deficiency installments(s) as the same shall arise, and no suits or actions to collect the amount or amounts of any Deficiency for any period shall prejudice Landlord's right to collect the Deficiency for any subsequent period by a similar suit or action . . . .

*Id.*[4] Furthermore, pursuant to the Guaranty, Debtor not only "unconditionally and irrevocably

---

[4] Sections 15.5 and 15.6 further provide, respectively, that "[n]o termination of this Lease pursuant to Section 15.3(a) hereof, and no re-entry or taking of possession by Landlord and/or reletting of the Premises or any part thereof pursuant to Sections 14.3(b) or 14.4(b) hereof, shall relieve Tenant of its liabilities and obligations under this Article 14, all of which shall survive such expiration, termination, re-entry, repossession or reletting" and that "[s]uit or suits for the recovery of damages, or for a sum equal to any installment or installments of Rental payable hereunder or any Deficiency or other sums payable by Tenant to Landlord pursuant to this Lease, may be brought by Landlord from time to time at Landlord's election, and nothing herein contained shall be deemed to require Landlord to await the date whereon this Lease and the Term would have expired by limitation had there been no event of default by Tenant, re-entry or termination." *See* APOC, Ex. 1 (Lease, Sections 15.5 and 15.6).

7

guarantee[d] to [Landlord] full and punctual payment, when due, whether at the stated due date, by acceleration or otherwise of forty-five percent (45%) of the obligations of [Tenant] under the Lease," but also agreed to "indemnify [Landlord] from and against forty-five percent (45%) of all monetary losses associated with [Landlord's] ownership of the [Premises], other than consequential losses." *See* APOC, Ex. 2 (Guaranty ¶ 1(a)).

In other words, pursuant to the relevant provisions of the Lease and the Guaranty, Debtor has a clear obligation to pay 45% of the Deficiency that would accrue over the remainder original lease term (and other amounts that may not constitute Rental under the Lease, but do constitute "monetary losses" associated with Landlord's ownership of the Premises, *e.g.*, Landlord's operating expenses). Only if Landlord *makes a demand* for "liquidated and agreed final damages" (which it has not done) would Section 15.4(d) apply instead of Section 15.4(c). *See*, *e.g.*, *White Plains Plaza Realty, Inc. v. Town Sports Int'l, LLC*, No. 02177/07, 2009 WL 7401502, at *57-58 (Sup. Ct., Westchester Cty., Comm. Div. Feb. 2, 2009) (noting that, to assert a claim for liquidated damages "in lieu of any further monthly deficiencies" under the applicable lease, the "[landlord] had to make a demand therefor (as the Lease required it)" and, by making such a demand, "[landlord] made a deliberate election between two contractually authorized remedies").[5]

### IV.    IN ANY EVENT, THE COURT SHOULD REJECT DEBTOR'S ATTEMPT TO CALCULATE LANDLORD'S DAMAGES AFTER MITIGATION

Landlord does not dispute that it has mitigated its damages to Debtor's benefit by reletting the Premises to six tenants under the New Leases. The amount actually received by Landlord under the New Leases, as of the date of the APOC, was $661,775, and Landlord reduced its claim

---

[5]    Despite Debtor's arguments to the contrary, applying Section 15.4(c) – as opposed to Section 15.4(d) – also would not render any provision of the Lease meaningless or force the Court to "wait until 2041 to ascertain what rents were collected." *See* Debtor's Brief, p. 4-5. In fact, the Court, with the assistance of necessary and appropriate expert witnesses, could calculate Landlord's state law damages as reduced by its mitigation efforts just as easily under Section 15.4(c) as it could under Section 15.4(d).

for post-eviction rent by that amount. *See* APOC ¶ 121. Under the New Leases, Landlord has contracted to receive $ ▮▮▮▮▮▮▮ before the New Leases expire. *See* Declaration of Jack Braha dated September 18, 2015 [CM/ECF Doc. 153] (the "Braha Decl.") ¶ 91.

Nonetheless, the Court must still reject Debtor's attempted damages calculation for several reasons. Most importantly, Debtor refuses to acknowledge that the original Lease was a triple-net, thirty-five year, commercial lease (APOC, Ex. 1 (Lease, Section 2.4)), whereas the New Leases are gross leases (Braha Decl. ¶¶ 91-93). The chart below illustrates the key differences between original Lease (triple-net) and the current New Leases (gross) for purposes of any mitigation of damages analysis[6]:



---

[6] Landlord did not assume any tax increases in the future, nor any adjustments to Landlord's current operating expenses for inflation, for purposes of this illustration.

Namely, under the New Leases (gross), Landlord is responsible for operating expenses and taxes (currently totaling approximately $▓▓▓▓ per year), which it was not responsible for under the breached Lease (triple-net). Braha Decl. ¶¶ 91-93. After properly taking these amounts into consideration, Landlord's actual net rental income in 2015 was $▓▓▓▓ and not $▓▓▓▓ as claimed by Debtor. Since the Base Rent under the original Lease would have generated $1,004,069 in *net rental income* for Landlord (which Debtor unconditionally and irrevocably guaranteed), Landlord suffered damages of approximately $▓▓▓▓ in 2015, despite its mitigation efforts (which in turn reduced Debtor's liability). By comparing $1,004,069 to each of the figures in the Net Income column above, one can further see that – again, despite its mitigation efforts – Landlord has not and will not exceed $1,004,069 in net rental income on an annual basis and will therefore continue to suffer damages on an annual basis.

Debtor's purported damages calculation is flawed for other reasons, too. Among other things, Debtor completely ignores the period from April 2008 through the eviction of the last subtenant in January 2013, during which Tenant (and Debtor) failed to pay the rent due despite their obligation to do so. Braha Decl. ¶¶ 34-42; APOC ¶¶ 18-33. Debtor also overlooks the expenses that Landlord had to incur to finish the build-out and secure the six new tenants, as well as the fact that Landlord will incur additional costs and expenses in repairing, refinishing, and/or marketing the rental units between future tenants (assuming it is able to obtain such future tenants). Braha Decl. ¶¶ 51-54, 81-89, 95. All of these items – without limitation – must be factored into any "final" mitigation of damages analysis. *See*, *e.g.*, *Bibeau v. Ward*, 228 A.D.2d 943, 946, 645 N.Y.S.2d 107, 111 (3d Dep't 1996) (finding that a party to a contract "may recover mitigation expenses . . . incurred as a result of the breach"); *Andover Togs*, 231 B.R. at 537 (finding that "[landlord] may include in its computation of damages the capital costs which it necessarily expended to obtain successor tenants").

10

Dated: New York, New York
May 3, 2016

Respectfully submitted,

McLAUGHLIN & STERN, LLP

By:   /s/ Matthew D. Sobolewski
Matthew D. Sobolewski, Esq.

260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100
Fax: (212) 448-0066
msobolewski@mclaughlinstern.com

*Attorneys for 3 West 16th Street LLC*

11