**Hearing Date & Time: September 15, 2016 at 10:00 a.m.**

McLAUGHLIN & STERN, LLP
Matthew D. Sobolewski
Chester R. Ostrowski
260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100

*Attorneys for 3 West 16th Street, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :          Chapter 11
                                              :
STEVEN J. ANCONA,                             :          Case No. 14-10532 (MKV)
                                              :
            Debtor.                           :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

## 3 WEST 16th STREET, LLC'S MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 CASE OR, IN THE ALTERNATIVE, TO APPOINT A CHAPTER 11 TRUSTEE

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

SUMMARY OF GROUNDS FOR REQUESTED RELIEF .......................................... 1

STATEMENT OF FACTS ..................................................................................... 3

    A.    The Lease and Guaranty ...................................................... 3

    B.    The State Court Action, Multiple Fraudulent Conveyances,
           and "Bad Faith" Bankruptcy Filing ........................................ 4

    C.    The Lack of Any Progress in This Bankruptcy Case ............................. 7

    D.    Debtor's Non-Reported Funds Held Outside of the Bankruptcy Case ............. 10

THE APPLICABLE LEGAL STANDARDS ............................................................. 12

    A.    Conversion Under Section 1112(b) ......................................... 12

    B.    Appointment of a Chapter 11 Trustee Under Section 1104(a) ..................... 16

ARGUMENT ...................................................................................................... 18

    POINT ONE
    CAUSE EXISTS TO CONVERT THE CASE FROM ONE UNDER
    CHAPTER 11 TO ONE UNDER CHAPTER 7 ................................................ 18

    POINT TWO
    IF THE CASE IS NOT CONVERTED PURSUANT TO SECTION
    1112(b), THE COURT SHOULD APPOINT A TRUSTEE
    PURSUANT TO SECTION 1104(a) ........................................................... 23

    A.    Cause Exists for Appointment of a Chapter 11 Trustee Under
           Section 1104(a)(1) ........................................................ 23

    B.    Appointment of a Chapter 11 Trustee Would Be in the Best
           Interest of All Parties ..................................................... 25

CONCLUSION ................................................................................................... 26

# **TABLE OF AUTHORITIES**

**Cases**

*C-TC 9th Ave. Partnership v. Norton Co. (In re C-TC 9th Ave. Partnership)*,
    113 F.3d 1304 (2d Cir. 1997)............................................................. 12, 13, 18

*In re AdBrite Corp.*, 290 B.R. 209 (Bankr. S.D.N.Y. 2003)........................................... 22

*In re Ashley River Consulting, LLC*, Nos. 14-13406(MG), 14-13407(MG),
    2015 WL 1540941 (Bankr. S.D.N.Y. Mar. 31, 2015). ........................................ 16, 24, 25

*In re Chief Executive Officers Clubs, Inc.*, 359 B.R. 527 (S.D.N.Y. 2007). ................................ 20

*In re Ionosphere Clubs, Inc.*, 113 B.R. 164 (Bankr. S.D.N.Y. 1990).....................................17, 23

*In re Just Plumbing & Heating Supply, Inc.*, No. 11-10151 (MG),
    2011 WL 4962993 (Bankr. S.D.N.Y. Oct. 11, 2011). ................................................ 22 n.7

*In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309 (Bankr. S.D.N.Y. 2001). .................................... 13

*In re Keeley & Grabanski Land Partnership*, 455 B.R. 153
    (8th Cir. B.A.P. 2011). .................................................................. 16-17, 24, 25

*In re Liberate Technologies*, 314 B.R. 206 (Bankr. N.D. Cal. 2004)..................................... 14-15

*In re Lizeric Realty Corp.*, 188 B.R. 499 (Bankr. S.D.N.Y. 1995)............................................... 19

*In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d Cir. 1998)................................. 17, 25

*In re Pichacho Hills Utility Co.*, 518 B.R. 75 (Bankr. D.N.M. 2014). ............................ 15, 20, 22

*In re Pleasant E. Associates*, 286 B.R. 509 (Bankr. S.D.N.Y. 2002).......................................... 22

*In re Reyes*, No. 14-13233(SMB), 2015 WL 4624156
    (Bankr. S.D.N.Y. Aug. 4, 2015). ................................................................ 12, 14

*In re Rubio*, No. 09-75163 (AST), 2011 WL 124458
    (Bankr. E.D.N.Y. Jan. 13, 2011)....................................................................... 22

*In re Sal Caruso Cheese, Inc.*, 107 B.R. 808 (Bankr. N.D.N.Y. 1989)....................................... 20

*In re Schur Management Co.*, 323 B.R. 123 (Bankr. S.D.N.Y. 2005). .................................. 12, 14

*In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999). ............................................................. 14

*In re Soundview Elite, Ltd.*, 503 B.R. 571 (Bankr. S.D.N.Y. 2014). ...................................... 17-18

*In re Syndicom Corp.*, 268 B.R. 26 (Bankr. S.D.N.Y. 2001). ......................................... 13-14, 18

*In re V. Savino Oil & Heating Co.*, 99 B.R. 518 (Bankr. E.D.N.Y. 1989). ................................ 25

*In re Wright Air Lines, Inc.*, 51 B.R. 96 (Bankr. N.D. Ohio 1985). ............................................ 19

*NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated
     Telecom Express, Inc.)*, 384 F.3d 108 (3d Cir. 2004). ................................................ 14-15

*Santa Fe Minerals, Inc. v. Bepco, L.P. (In re 15375 Memorial Corp.)*,
     589 F.3d 605 (3d Cir. 2009)............................................................................................. 14

## **Statutes**

11 U.S.C. § 502............................................................................................................. 2, 14-15

11 U.S.C. § 1104......................................................................... 1, 3, 16, 17, 18, 23, 24-25

11 U.S.C. § 1112................................................................... 1, 3, 12, 13, 15, 18, 19, 22

**TO THE HONORABLE MARY KAY VYSKOCIL,**
**UNITED STATES BANKRUPTCY JUDGE:**

3 West 16th Street, LLC ("3 West 16th Street" or "Landlord"), by its attorneys, hereby moves for an Order converting the above-captioned case (the "Case") from one under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") to one to one under chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b) or, in the alternative, appointing a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a). In support of its motion (the "Motion"), 3 West 16th Street states as follows:

## SUMMARY OF GROUNDS FOR REQUESTED RELIEF

1. This Case involves what is essentially a two-party dispute between 3 West 16th Street and the debtor and debtor-in-possession Steven J. Ancona ("Debtor").

2. To be sure, Debtor has very few *real* creditors aside from 3 West 16th Street. More specifically, only eight (8) creditors – including 3 West 16th Street – have filed unsecured, non-priority claims. The total amount of these claims is $21,032,914, with 3 West 16th Street's claim of $20,561,342 representing 97.8%. That said, it appears that only four of the eight claims were filed by non-"insiders" with no known association with Debtor (*i.e.*, Claim Nos. 2 & 4 by American Express Bank, FSB for $10 & $1,205, respectively; Claim No. 5 by American Express Centurion Bank for $33,604; and Claim No. 7 by 3 West 16th Street, as amended). It further appears that Claim Nos. 2, 4, and 5 are nothing more than accrued payables that Debtor could have paid off before his bankruptcy filing, but chose not to for the purpose of creating creditors in this Case. In any event, if the claims of the creditors who appear to have an association with Debtor are not considered, 3 West 16th Street's claim represents 99.8% of the filed unsecured claims.

3. As for those unsecured claim amounts that Debtor included on his Amended Schedule F, but did not list as "contingent, unliquidated, or disputed," they total $617,496.

1

However, of these purported scheduled claims (no filed proofs of claim), it appears that only three may be legitimate and are not claims by "insiders" having no association with Debtor (*e.g.*, Katz Melinger PLLC ($3,600); Citibank ($22,905); and JPMorgan Chase Bank ($2,957)). This, of course, assumes that the alleged Citibank and JPMorgan claims are not "contingent, liquidated, or disputed." If the scheduled claims of the creditors who appear to have an association with Debtor are not considered, 3 West 16th Street's claim represents 99.7% of the filed and just scheduled unsecured claims.

4.      Debtor cannot point to any reasonable plan of reorganization involving liquidation or rehabilitation or any special ability to maximize value for his creditors. Plus, given the size of 3 West 16th Street's claim in relation to the anticipated amounts of other non-"insider" claims, any plan that Debtor might propose would not be confirmable absent 3 West 16th Street's consent.

5.      In addition to the foregoing, the timing and circumstances surrounding Debtor's commencement of this Case on March 5, 2014 (the "Petition Date"), as well as the conduct of Debtor and his counsel since the Petition Date, evidences that Debtor never had any need or intention to reorganize under chapter 11 of the Bankruptcy Code.

6.      Instead, it appears that Debtor commenced this Case for the improper purpose of delaying or frustrating the legitimate efforts of 3 West 16th Street to enforce its rights against Debtor related to, among other things, the Lease and Guaranty and/or to take advantage of the various benefits typically intended under the Bankruptcy Code to assist debtors experiencing some degree of actual financial distress, including, without limitation, the automatic stay and the statutory limitation on claims for lease termination damages set forth in 11 U.S.C. § 502(b)(6) (the "Statutory Cap").

7.      Based on the foregoing, as set forth in greater detail below, it is clear that the Case was not filed in good faith. Accordingly, the Court should convert the Case from one under chapter

2

11 to one under chapter 7 pursuant to 11 U.S.C. § 1112(b).  Alternatively, the Court should appoint a chapter 11 trustee either for cause or in the interests of the parties pursuant to 11 U.S.C. § 1104(a).[1]

## STATEMENT OF FACTS

#### A.    The Lease and Guaranty

8.    In March 2006, 3 West 16th Street entered into a 35-year, triple-net lease (the "Lease") with 3 West Development LLC ("Tenant") for a building (the "Building") located at 3 West 16th Street, New York, New York (the "Premises").  *See* CM/ECF Doc. 153 ¶ 4.

9.    Pursuant to a Guaranty and Indemnity agreement executed in connection with the Lease (the "Guaranty"), Debtor not only "unconditionally and irrevocably guarantee[d] to [Landlord] the full and punctual payment, when due, whether at the stated due date, by acceleration or otherwise of forty-five percent (45%) of the obligations of [Tenant] under the Lease," but also agreed to "indemnify [Landlord] from and against forty-five percent (45%) of all monetary losses associated with [Landlord's] ownership of the [Premises], other than consequential losses" and to "pay all reasonable costs, expenses (including, without limitation attorneys' fees and disbursements) and damages, other than consequential or punitive damages, arising out of enforcement of this Guaranty."  *See id.* ¶¶ 6-7.

10.    Ultimately, Tenant breached the Lease by, among other things, failing to make any payments due and owing under the Lease after March 19, 2008 and abandoning work on pre-approved alterations to the Building in or around late March or early April 2008.  *See id.* ¶¶ 8-10.

---

[1]    Assuming the Case is converted or a chapter 11 trustee is appointed, Debtor's recent retention of Wachtel Missry LLP ("Wachtel Missry") as special counsel will likely become unnecessary as the chapter 7 or chapter 11 trustee will likely want to retain his/her own counsel in connection with 3 West 16th Street's Amended Claim.

11.     Debtor – for his part – failed to make good on his clear duties and obligations arising under the Guaranty.  *See id.*

**B.     The State Court Action, Multiple Fraudulent Conveyances, and "Bad Faith" Bankruptcy Filing**

12.     In a decision dated January 11, 2010 in a prior state court action involving 3 West 16th Street and Tenant (among others), titled *Magen David of Union Square, et al. v. 3 West 16th Street, LLC*, Index No. 600573/2008 (the "State Court Action"), the Supreme Court of the State of New York, County of New York granted summary judgment in favor of 3 West 16th Street on, among other things, its third-party complaint against Debtor for breach of the Guaranty and ordered that 3 West 16th Street settle an Order on notice.  The settled Order was entered by the Supreme Court on July 16, 2010.  True and correct copies of the Supreme Court's January 11, 2010 decision and July 16, 2010 Order (collectively, the "State Court Judgment") are annexed hereto as **Exhibit A**.

13.     By Decision dated September 29, 2011, the Appellate Division, First Department affirmed the State Court Judgment, concluding that the trial court "correctly found that [Debtor] had raised no defense to his obligation on the guaranty and indemnity provisions and, as such, properly granted [3 West 16th Street] judgment on its [guaranty and indemnity claims]."  A true and correct copy of the First Department's September 29, 2011 Decision is annexed hereto as **Exhibit B**.

14.     In other words, there is no dispute that 3 West 16th Street is entitled to damages against Debtor as Guarantor for, among other things, damages arising under the 35-year triple-net Lease (and this issue cannot now be re-litigated by Debtor).  *See* Exhibits A and B.  However, before a damages trial was held in the State Court Action, Debtor began fraudulently transferring multiple assets and, ultimately, stayed the State Court Action by filing for bankruptcy protection.

4

15.    More specifically, approximately two (2) weeks after the Appellate Division's decision, on October 15, 2011, Debtor fraudulently conveyed his interest in valuable real property located at 31 Bethune Street, New York, New York (the "Bethune Property") to 31 Bethune Street, LLC – *i.e.*, a single-purpose entity formed by Debtor and his family members for the sole purpose of holding title to the Bethune Property.  A true and correct copy of the Bargain and Sale Deed for the Bethune Property, dated October 15, 2011, is annexed hereto as **Exhibit C**.

16.    At the same time, Debtor also fraudulently conveyed his interest in valuable real property located at 20 Warren Street, New York, New York (the "Warren Property") to another single-purpose entity, 20 Warren Street, LLC.  A true and correct copy of the Bargain and Sale Deed for the Warren Property, dated October 15, 2011, is annexed hereto as **Exhibit D**.

17.    Given that the transfers of the Bethune Property and the Warren Property represented an obvious effort by Debtor to insulate the two properties from an impending judgment on damages in the State Court Action, on April 10, 2013, 3 West 16th Street commenced a separate action in the Supreme Court, New York County, titled *3 West 16th Street, LLC v. Steven Ancona, et al.*, Index No. 153301/2013 (the "Fraudulent Conveyance Action"), seeking, *inter alia*, to avoid the fraudulent transfers.[2]

18.    By Decision and Order dated October 1, 2013 (the "October 2013 Order"), the Supreme Court denied defendants' motion for summary judgment in the Fraudulent Conveyance

---

[2]    Although not the subject of the Fraudulent Conveyance Action, in December 2011, Debtor – as Managing Member and ninety-five percent (95%) owner of Flatiron Real Estate Advisors, LLC ("FREA") – caused FREA to fraudulently convey a portion of its then-fifty-percent (50%) interest in Flatiron-Williamsburg Managers, LLC ("FWM") to Debtor's brother, Robert Ancona.  *See* Transcript of Deposition of Steven J. Ancona dated November 3, 2014, a true and correct copy of which is annexed hereto as **Exhibit E** at pp. 81-84; Limited Liability Company Agreement of FREA dated January 2, 2000, a true and correct copy of which is annexed hereto as **Exhibit F**; Amended and Restated Operating Agreement for FWM dated December 23, 2011, a true and correct copy of which is annexed hereto as **Exhibit G**.  Despite multiple requests by 3 West 16th Street, including at Debtor's 2004 Examination, Debtor has not produced a copy of the original operating agreement for FWM.  *See* CM/ECF Doc. 153 ¶¶ 114-118.

Action, finding, among other things, several factors permitting an inference of intent to defraud or

hinder creditors.  More specifically, the Court wrote, in relevant part, as follows:

> Badges of fraud exist in this case, presenting an issue of fact as to
> whether defendant acted with fraudulent intent.  No explanation is
> given for Ancona's apparent sudden desire to transfer the properties
> to limited liability companies apparently under his or a family
> member's control.  Although Ancona did not transfer properties to
> family members, he and persons to whom he appears to be related
> transferred their properties to entities owned by themselves.  Ancona
> is the manager of [31 Bethune Street, LLC], and Jack Ancona, one
> of the transferees and members, is the manager of [20 Warren Street,
> LLC].
>
> *  *  *
>
> Ancona transferred the property to entities in which he apparently
> exercises control.  It appears that the transfers were made to reduce
> the chances of [3 West 16th Street] collecting the debt.  Even if the
> exchanges were for fair equivalents, there is a question of bad faith.
>
> Another factor permitting an inference of intent to defraud is the
> amount of time that elapses between an event alerting the debtor that
> the creditor may claim the property and the subsequent, allegedly
> fraudulent conveyance of the property . . . .  In this case, the transfers
> were made less than a month after the First Department affirmation
> of the judgment against Ancona.

A copy of the October 2013 Order is annexed hereto as **Exhibit H**.

19.     Subsequently, on October 25, 2013, the defendants in the Fraudulent Conveyance

Action filed a Notice of Appeal of the October 2013 Order.

20.     Thereafter, seeking to thwart the State Court Judgment (and the impending trial on

damages in the State Court Action), to avoid any further adverse decisions in the Fraudulent

Conveyance Action, to toll the deadline for perfection of an appeal of the October 2013 Order in

the Fraudulent Conveyance Action (set to expire on April 25, 2014, absent extension), to take

advantage of the automatic stay and the Statutory Cap, and to otherwise evade his indisputable

obligations under the Guaranty, Debtor commenced this Case by filing a voluntary petition for

6

relief under chapter 11 on March 5, 2014.  *See* CM/ECF Doc. 1.

21.     Since the Petition Date, Debtor has lived rent-free in the Bethune Property pursuant to a 99-year lease, which he entered into with his wife – Lauren Ancona – for no consideration. *See* Standard Form of Apartment Lease dated July 1, 2007 and Operating Agreement for 31 Bethune Street, LLC annexed hereto as **Exhibit I** and **Exhibit J**, respectively.

22.     Tellingly, on March 27, 2014 (*i.e.*, less than one month after Debtor filed his bankruptcy petition), Debtor's wife also purchased a second home located at 97 North Lake Drive, Long Branch, New Jersey using $375,000 in cash (although, upon information and belief, she has no source of income or wealth independent of Debtor, which would have allowed her to separately fund such a purchase).  A true and correct copy of the Deed dated March 27, 2014 is annexed hereto as **Exhibit K**.

**C.     The Lack of Any Progress in This Bankruptcy Case**

23.     Debtor's monthly operating reports ("MORs") – since the beginning of this Case – demonstrate that the estate has had very little cash-in-hand from month-to-month and, in some instances, has even had a deficit.  *See* CM/ECF Docs. 16, 22, 33, 51, 60, 66, 70, 77, 89, 94, 97, 102, 107, 119, 122, 129, 140, 147, 168, 175, 176, 179, 182, 189, 195, 222, 232, 235, and 241.

24.     Nonetheless, Debtor has not made any attempt whatsoever to sell assets or otherwise bring money into the estate.  Nor has Debtor objected to any claim other than the claim by 3 West 16th Street, despite ample and undeniable grounds for objection.

25.     By way of example, Debtor's father, Jack Ancona, filed a bogus claim for $375,059 in unpaid rent dating back to when Debtor was in college in 1995 and for nine (9) years after that – *i.e.*, until 2004, which is still ten (10) years before Debtor filed bankruptcy.  Debtor has not objected to this claim, even though: (i) it is not supported with any documentation in violation of FED. R. BANKR. P. 3001; (ii) Debtor testified at his Rule 2004 examination on November 3, 2014

7

that he "was not aware of any" documents written by his father stating in words or substance that

he owed him any amount of money (*see* Exhibit E at pp. 20-21); and (iii) the claim is clearly barred

by the applicable statute of limitations for a claim of unpaid rent (six years).[3]

26.    Although this Case has been pending for over two years, Debtor also has not filed

a disclosure statement or a chapter 11 plan or made any effort whatsoever to negotiate the terms

of a plan with his creditors.

27.    The only thing "accomplished" to date has been Debtor's counsel and Debtor's

former special counsel incurring substantial legal fees with virtually no results and no meaningful

benefit to Debtor's estate.

28.    Indeed, with respect to Debtor's motion for summary judgment, 3 West 16th

Street's counsel advised Debtor and the Court in connection with the pre-motion conference as

follows:

> Initially, while we agreed to Debtor's request for a pre-motion
> conference, it appears that the main issues raised in the Request
> Letter may not be susceptible to summary disposition. Indeed, the
> parties previously attempted to resolve some of these same issues on
> summary judgment at the state court level but were unsuccessful due
> to disputed issues of material fact. Furthermore, it appears that the
> bankruptcy issues relevant to Landlord's proof of claim are also
> complicated for the same reason. Accordingly, it may be more cost-
> effective to simply resolve these contested issues at an evidentiary
> hearing.

*See* CM/ECF Doc. 123.

29.    As 3 West 16th Street expected, Debtor did not substantially prevail on his motion

for summary judgment, nor did the Court's Order narrow the issues in this Case in any significant

way. *See* CM/ECF Docs. 184-185. More importantly, the enormous fees incurred by Debtor's

---

[3]    Ironically, Debtor's father now lives rent-free in an ocean-front condominium 50% owned by
Debtor and his wife (with the other 50% owned by Debtor's brother, Robert Ancona) located at 717 Ocean
Avenue, Apt. 714, Long Branch, New Jersey. *See* Exhibit E at pp. 87-90.

counsel and Debtor's former special counsel in connection with the motion for summary judgment did not result a benefit to the estate commensurate with the fees and expenses for which they then repeatedly sought payment.

30.    Refusing to accept Chief Judge Morris' well-reasoned decision on the summary judgment motion, Debtor pushed ahead and also filed a meritless motion for reargument, thereby forcing the estate to incur even more unwarranted fees and expenses.  The motion for reargument was, of course, denied in short order, with the Court concluding that "the Debtor merely repeats (literally) the arguments . . .  that were already presented in the Summary Judgment Motion."  *See* CM/ECF Doc. 194.

31.    In addition to Debtor's ill-conceived motions for summary judgment and reargument, Debtor also filed a baseless motion to cancel the notice of pendency related to the 31 Bethune Property.  *See* CM/ECF Doc. 177.  That motion, too, was flatly denied because it, among other things, ignored the clear statutory requirement that Debtor provide an "undertaking" in exchange for cancellation.  *See* CM/ECF Docs. 186, 234.[4]

32.    Finally, Debtor filed – not one, but two – unnecessary "emergency" motions seeking authorization for third-party payment of the exorbitant legal fees and expenses incurred by his counsel and former special counsel.  More specifically, Debtor first sought an Order authorizing FREA to act as the third-party payor.  *See* CM/ECF Doc. 209.  When that motion was

---

[4]    The existing mortgage loan from Dime Savings Bank of Williamsburg ("Dime Savings") to 31 Bethune Street, LLC has been in default since December 2015.  *See* CM/ECF Doc. 177 ¶ 6.  Since 2016, Debtor's new special counsel, Wachtell Missry, has represented 31 Bethune Street, LLC in connection with what appears to be a failed attempt to refinance the mortgage loan.  *See* CM/ECF Doc. 236-1 ¶¶ 3(g), 3(p); CM/ECF Doc. 237 ¶ 7.  Should Dime Savings commence foreclosure proceedings in New York state court, it would, in effect, amount to a liquidation of Debtor's interest in 31 Bethune Street, LLC (which, as set forth in Paragraphs 15 and 17-20 above, is at issue in the Fraudulent Conveyance Action) outside of the Bankruptcy Court.  This real possibility provides yet another reason why this Court should convert this Case to one under chapter 7 or, alternatively, appoint a chapter 11 trustee.

denied (due, in large part, to the apparent lack of separateness between Debtor and FREA), Debtor

subsequently sought an Order authorizing payment of the fees and expenses by his father, Jack

Ancona.  *See* CM/ECF Docs. 233, 224.  With respect to the latter, the Court, *again*, found that

Debtor's motion was without merit and denied the relief sought by Debtor in all respects.  *See*

CM/ECF Doc. 231.

**D.    Debtor's Non-Reported Funds Held Outside of the Bankruptcy Case**

33.    As noted above, Debtor owns ninety-five percent (95%) of FREA and serves as its

Managing Member.  *See* Exhibit F.

34.    FREA, in turn, owns 1.48% of Flatiron-Williamsburg Property Group, LLC

("FWPG") and 33.33% of FWM.  *See* Operating Agreement of FWPG dated December 1, 2004, a

true and correct copy of which is annexed hereto as **Exhibit L**; *see also* Exhibit G.

35.    FWM, which is the managing member of FWPG, owns 9.78% of FWPG.  *See*

Exhibit L.[5]

36.    Since the Petition Date, FREA and FWM have received distributions from FWPG

totaling at least $2,713,906 (the "FWPG Distributions).  *See* Summary of Debtor's Allocable Share

of FWPG Distributions since the Petition Date, which is annexed hereto as **Exhibit M**.[6]

---

[5]    Debtor's new special counsel, Wachtel Missry, represented FWPG, FWM, FREA, Robert Ancona
(Debtor's brother), and Morris Sutton (Debtor's close friend) in a litigation commenced and subsequently
settled in 2015, involving a dispute over certain membership interests in various entities.  *See* CM/ECF
Doc. 236-1 ¶ 3(c).  Although not disclosed either in Debtor's initial application to retain Wachtel Missry as
special counsel or the supplemental declaration submitted in support thereof, Wachtel Missry also
represented FWPG in connection with the $35 million refinancing of all of the properties owned by that
entity, which occurred in 2015.  Significantly, in connection with this refinancing, the ownership interests
of FREA and FWM in FWPG increased by approximately 18.52% (due to the buyout of some of the other
limited partners).  More specifically, FREA's interest increased from 1.25% to approximately 1.48%, while
FWM's interest increased from 8.125% to approximately 9.78%.

[6]    Jack Braha is the manager of Braha Properties LLC, which is the sole member of 3 West 16th
Street.  *See* CM/ECF Doc. 153 ¶ 1.  Mr. Braha is also a limited partner in FWPG and, as such, has received
quarterly distribution reports since on or before the Petition Date.  Exhibit M represents a summary of
Debtor's allocable share of the FWPG Distributions based on these quarterly distribution reports.

37.     Of the FWPG Distributions, at least $1,102,705 has been allocable to Debtor, personally, in connection with his above-referenced ownership interest in FREA.  *See* Exhibit M.

38.     If the fraudulent conveyance referred to in footnote 2 is avoided, FREA's ownership interest in FWM would increase to at least 50%, which in turn, would increase Debtor's allocable share of distributions from FWPG through FREA from at least $1,102,705 to at least $1,476,095.  *See* Exhibit M.

39.     No third-party valuations of Debtor's LLC ownership interests (including his interest in FREA) have been provided to date.  On Debtor's Schedule D, he lists no value for FREA and merely states "To Be Provided."  Debtor cannot possibly formulate – let alone propose and confirm – a plan without third-party valuations of his various LLC ownership interests (including his interest in FREA).

40.     Notwithstanding the more than $1 million in distributions allocable to Debtor, as noted above, Debtor's MORs filed in this Case have demonstrated that the estate has had very little cash-in-hand from month-to-month and, in some instances, has even had a deficit.  *See* CM/ECF Docs. 16, 22, 33, 51, 60, 66, 70, 77, 89, 94, 97, 102, 107, 119, 122, 129, 140, 147, 168, 175, 176, 179, 182, 189, 195, 222, 232, 235, and 241.

41.     In fact, the largest "profit" reported between the Petition Date and May 2016 was $20,011.55 in September 2015, which was attributable, in large part, to a $16,000 distribution Debtor took from FREA during that month.

42.     Curiously, after Debtor's recent failed attempt to obtain this Court's approval for payment of attorneys' fees and costs by Debtor's father, his MOR for June 2016 showed – for the first time – a much more significant profit of $55,583.48, which was directly attributable to a $77,000 discretionary distribution that Debtor took from FREA during that month.  *See* CM/ECF Doc. 235.  By contrast, Debtor most recently reported – in his MOR for July 2016 – a profit of

only $1,387.30, since his distribution from FREA during that month was only $25,000. *See* CM/ECF Doc. 241.

**THE APPLICABLE LEGAL STANDARDS**

**A.    Conversion Under Section 1112(b)**

43.    Section 1112 of the Bankruptcy Code authorizes conversion or dismissal of a chapter 11 case for "cause" on the motion of any party in interest.  More specifically, Section 1112(b)(1) provides, in relevant part, as follows:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1).

44.    Although "bad faith" is not a statutorily enumerated reason for conversion or dismissal, it is well-settled that a filing made in bad faith constitutes "cause" under Section 1112(b). *See*, *e.g.*, *C-TC 9th Ave. Partnership v. Norton Co. (In re C-TC 9th Ave. Partnership)*, 113 F.3d 1304, 1310 (2d Cir. 1997); *In re Reyes*, No. 14-13233(SMB), 2015 WL 4624156, at *4 (Bankr. S.D.N.Y. Aug. 4, 2015) (Bernstein, J.); *In re Schur Management Co.*, 323 B.R. 123, 126 (Bankr. S.D.N.Y. 2005) (Gropper, J.).

45.    The U.S. Court of Appeals for the Second Circuit has recognized the following eight factors as potentially indicative of a bad faith filing giving rise to "cause" for conversion or dismissal under Section 1112(b):

> (1)    the debtor has only one asset;
>
> (2)    the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

12

(3)     the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)     the debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in a pending state court action;

(5)     the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6)     the debtor has little or no cash flow;

(7)     the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

(8)     the debtor has no employees.

*C-TC 9th Ave. Partnership*, 113 F.3d at 1311 (citations omitted); *see also In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 333-36 (Bankr. S.D.N.Y. 2001) (Gerber, J.) (dismissing bankruptcy case upon consideration of factors identified in *C-TC 9th Ave. Partnership*).

46.    In concluding that cause existed to dismiss or convert under Section 1112(b) as the result of a bad faith filing, Judge Gerber, in *In re Syndicom Corp.*, 268 B.R. 26 (Bankr. S.D.N.Y. 2001), addressed the *C-TC 9th Ave. Partnership* factors (or "reasonable variants of them"), as follows:

[(1)]    Other than [the moving creditor], the Debtor has only two or three creditors who are not either insiders or the Debtor's lawyers.  They represent less than 8% of the Debtor's stated total claims.  There certainly is not a significant creditor body to protect.

[(2)]    . . . [T]his case was filed for the predominant purpose of blocking measures by [the moving creditor] that had been authorized by the state courts to effect the [state court judgment];

[(3)]    . . . [The] two party dispute between the Debtor and [the moving creditor] . . . can be resolved in the pending litigation in the Supreme Court and First Department; indeed, this Court seems to be little more than a new locale for continuing that two-party dispute.

13

[(4)]    The timing of the Debtor's filing here . . . evidences an intent to delay or frustrate the legitimate efforts of [the moving creditor to exercise his rights under the state court judgment].

[(5)]    The Debtor has no cash flow . . . .

* * *

[(6)]    The case was filed as a tactical step in connection with the Debtor's state court battles with [the moving creditor], and with the purpose of securing a tactical advantage in the Debtor's battles with [the moving creditor].

[(7)]    There has been no showing of any financial pressure on the Debtor on the part of creditors other than the counter-party, [moving creditor], to the two-party dispute, or of financial distress as a consequence of other creditors' claims.

*Id.* at 51-52 (factors re-numbered here).

47.    The "mere possibility of a future need to file" due to a potential adverse judgment is not enough to establish a good faith bankruptcy filing. *See Schur Management*, 323 B.R. at 126-27 (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 164 (3d Cir. 1999)).

48.    Nor is a party generally permitted to resort to bankruptcy court protection to make strategic use of a specific bankruptcy law right or power or to secure a tactical litigation advantage. *See, e.g.*, *Santa Fe Minerals, Inc. v. Bepco, L.P. (In re 15375 Memorial Corp.)*, 589 F.3d 605, 625 (3d Cir. 2009) (quoting *SGL Carbon*, 200 F.3d at 165) ("[F]iling a Chapter 11 petition merely to obtain tactical litigation advantages is not within the legitimate scope of the bankruptcy laws."); *Reyes*, 2015 WL 4624156, at *5 (citations omitted) ("As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.").

49.    To be sure, "[a]t least one Bankruptcy Court has dismissed for lack of good faith a [c]hapter 11 Petition seeking primarily to cap a landlord's claim for future rent under § 502(b)(6)."

14

*NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 128 (3d Cir. 2004) (citing *In re Liberate Technologies*, 314 B.R. 206, 214-15 (Bankr. N.D. Cal. 2004)).

50.    Additionally, "[a] number of courts have found 'cause' to convert or dismiss where the debtor-in-possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers," since such a conflict necessarily impedes upon the debtor-in-possession's "fiduciary duty to maximize the value of the estate," which includes making "impartial investigations and decisions in pursuing claims on behalf of the estate." *In re Pichacho Hills Utility Co.*, 518 B.R. 75, 81-82 (Bankr. D.N.M. 2014) (internal quotations and citations omitted).

51.    "Once cause is established under [Section] 1112(b), the Court must dismiss or convert the case . . . , unless the court finds 'unusual circumstances . . . that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate.'" *Id.* at 81 (quoting 11 U.S.C. § 1112(b)(2)).

52.    The 1112(b)(2) "unusual circumstances" exception only applies if the debtor (or the estate or party in interest) objects to the conversion (or dismissal) request and "establishes that – (A) there is reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) . . ., or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act of omission of the debtor other than under paragraph [1112(b)(4)(A)] – (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court." 11 U.S.C. § 1112(b)(2).

53.    Additionally, to avoid conversion (or dismissal), the debtor "must have some special ability to maximize value for creditors." *Pichacho Hills Utility Co.*, 518 B.R. at 81 (citations omitted).

15

B.      **Appointment of a Chapter 11 Trustee Under Section 1104(a)**

54.     Section 1104(a) of the Bankruptcy Code authorizes the appointment of a chapter

11 trustee.  More specifically, it provides as follows:

> At any time after the commencement of the case but before
> confirmation of a plan, on request of a party in interest or the United
> States trustee, and after notice and a hearing, the court shall order
> the appointment of a trustee—
>
> > (1) for cause, including fraud, dishonesty, incompetence, or
> > gross mismanagement of the affairs of the debtor by current
> > management, either before or after the commencement of the
> > case, or similar cause, but not including the number of holders
> > of securities of the debtor or the amount of assets or liabilities of
> > the debtor; or
> >
> > (2) if such appointment is in the interests of creditors, any equity
> > security holders, and other interests of the estate, without regard
> > to the number of holders of securities of the debtor or the amount
> > of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

55.     "The list of wrongs constituting 'cause' that warrants the appointment of a trustee

[under subsection (a)(1)] is not exhaustive; some other '[f]actors relevant to the appointment of a

trustee under [subsection] (a)(1) include: conflicts of interest, including inappropriate relations

between corporate parents and the subsidiaries; misuse of assets and funds; inadequate record

keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and

lack of credibility and creditor confidence.'"  *In re Ashley River Consulting, LLC*, Nos. 14-

13406(MG), 14-13407(MG), 2015 WL 1540941, at *10 (Bankr. S.D.N.Y. Mar. 31, 2015) (Glenn,

J.) (citations omitted).

56.     Other factors that courts consider in determining whether there is "cause" for the

appointment of a trustee include:

> the materiality of any misconduct; the debtor-in-possession's
> evenhandedness or lack thereof in dealings with insiders and

16

> affiliated entities in relation to other creditors, the existence of pre-
> petition voidable preferences or fraudulent conveyances, whether
> any conflicts of interest on the part of the debtor-in-possession are
> interfering with its ability to fulfill its fiduciary duties, and whether
> there has been self-dealing or squandering of estate assets.

*In re Keeley & Grabanski Land Partnership*, 455 B.R. 153, 163 (8th Cir. B.A.P. 2011).

57.    Thus, a trustee may be appointed for cause where the debtor-in-possession fails to carry out its fiduciary duties with respect to all creditors, including, without limitation, the "duty to protect and conserve property in its possession for the benefit of creditors."  *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998) (quoting *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990)).

58.    The mere existence of acrimony between a debtor and its creditors may also rise to the level of "cause" requiring appointment of a trustee, depending on the facts and circumstances of the particular case.  *See*, *e.g.*, *Marvel*, 140 F.3d at 474 (citations omitted).

59.    Additionally, even where no "cause" is found, courts may appoint a trustee if doing so would be in the "interests of creditors, and equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2).

60.    Indeed, "[a] Bankruptcy Court has particularly wide discretion to appoint a trustee under the flexible standard of § 1104(a)(2) of the Bankruptcy Code, even when no cause exists under § 1104(a)(1)." *Keeley & Grabanski*, 455 B.R. at 165 (citations omitted).

61.    Factors that the Bankruptcy Court should consider in determining whether to appoint a chapter 11 trustee under the discretionary standard of Section 1104(a)(2) include: "(i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence—or lack thereof—of the business community and of creditors in present management; and (iv) the benefits derived by appointment

of a trustee, balanced against the costs of appointment." *In re Soundview Elite, Ltd.*, 503 B.R. 571, 583 (Bankr. S.D.N.Y. 2014) (Gerber, J.) (citations omitted).

62.    If a bankruptcy court orders the appointment of a chapter 11 trustee, then Section 1104(b) requires the U.S. Trustee to convene a meeting of creditors for the purpose of electing one "disinterested" person to serve as trustee in the case.  *See* 11 U.S.C. § 1104(b)(1).

## ARGUMENT

### POINT ONE

### CAUSE EXISTS TO CONVERT THE CASE FROM ONE UNDER CHAPTER 11 TO ONE UNDER CHAPTER 7

63.    The facts set forth above clearly demonstrate that "cause" exists to convert the Case, pursuant to Section 1112(b), from one under chapter 11 of the Bankruptcy Code to one under Chapter 7 of the Bankruptcy Code.

64.    Almost every one of the applicable *C-TC 9th Ave. Partnership* and *Syndicom* factors is present: (i) Debtor has no real creditors, either secured or unsecured, except for "insiders" and 3 West 16th Street and, thus, the issue of Debtor's financial condition is, in essence, a two-party dispute between Debtor and 3 West 16th Street; (ii) the timing of Debtor's bankruptcy filing evidences an intent to delay or frustrate 3 West 16th Street's rights, including, without limitation, its rights to collect damages and/or pursue its other remedies in both the State Court Action and the Fraudulent Conveyance Action; (iii) based upon Debtor's MORs, there is little-to-no cash flow; (iv) Debtor's cash flow is – at least during certain months – insufficient to meet Debtor's expenses; and (v) there has been no showing of any financial pressure on Debtor on the part of creditors other than 3 West 16th Street or of financial distress as a consequence of other creditors' purported claims.

18

65.     The Debtor's filing of the petition in this Case is also a classic example of a bad faith filing given that it was – very obviously – filed as a tactical step in connection with the "state court battles" between Debtor and 3 West 16th Street and improperly designed to secure an advantage for Debtor – to wit, a stay of the State Court Action and the Fraudulent Conveyance Action and a potential reduction of the damages to which 3 West 16th Street would be entitled in the State Court Action through application of the Statutory Cap.

66.     The Case was *not*, on the other hand, filed due to any financial pressure on the part of Debtor's other creditors and, in any event, the few legitimate non-"insider" unsecured creditors (if any) obtained no material benefit from Debtor's filing and will not be prejudiced in any material way if the Case is converted.

67.     Further establishing cause to convert this Case to one under chapter 7, there is no reasonable likelihood of rehabilitation on Debtor's part.  The term "rehabilitation," as used in Section 1112(b)(4), does not mean the same as reorganization; rather, it means to "put back in good condition" or to "re-establish on a firm, sound basis."  *See*, *e.g.*, *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995) (Garrity, J.); *In re Wright Air Lines, Inc.*, 51 B.R. 96, 99 (Bankr. N.D. Ohio 1985).  Here, the lack of a reasonable likelihood of rehabilitation is evidenced by the fact that, since the Petition Date, Debtor has not taken any steps toward confirmation of a plan.  He has not filed a disclosure statement or had any discussions with 3 West 16th Street regarding a plan.  He has done nothing to formulate a plan or determine whether a plan is feasible.  Moreover, despite the fact that almost two-and-a-half years have passed since the Petition Date, Debtor does not have (or at least has not produced) any third-party valuations or appraisals of his various LLC ownership interests (or any other assets) and, as a direct consequence, he does not know how much these assets are currently worth.

19

68.    Debtor's failure to fulfill his duties as a fiduciary of the estate constitutes additional cause for conversion of this Case to one under chapter 7. For one thing, Debtor has a readily observable "conflict of interest in properly investigating and pursuing potential fraudulent transfers" against his own brother and/or certain entities in which he holds ownership interests (including 31 Bethune Street, LLC and 20 Warren Street, LLC). *See*, *e.g.*, *Pichacho Hills Utility Co.*, 518 B.R. at 81-82 (internal quotations and citations omitted). This alone necessarily impedes upon his "fiduciary duty to maximize the value of the estate." *See id.*

69.    Debtor has also failed to properly act as a fiduciary by failing to provide information to his creditors. "As a fiduciary, debtor is obligated to protect and conserve property in its possession, as well as to provide voluntary and honest disclosure of financial information – a reasonable *quid pro quo* for its temporary relief from substantial financial obligations." *In re Chief Executive Officers Clubs, Inc.*, 359 B.R. 527, 539 n.6 (S.D.N.Y. 2007) (Glenn, J.) (quoting *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 817 (Bankr. N.D.N.Y. 1989)).

70.    As set forth above, Debtor's allocable share of distributions from FWPG total at least $1,102,705 and should be as much as $1,476,095 after the fraudulent transfer to Debtor's brother is avoided. But for the limited distributions Debtor has reported in his MORs (except for June 2016), however, there is *no visibility whatsoever* as to what is happening to these and other distributed funds (and the corresponding value of Debtor's LLC ownership interests), which will be needed to pay 3 West 16th Street and his other legitimate creditors (if any).

71.    Despite repeated demands by 3 West 16th Street, Debtor has also failed – since the commencement of this Case – to produce documents or information regarding, *inter alia*, Debtor's financial condition and various relevant business transactions between Debtor, his family members, and other "insiders" (and/or their respective corporate alter egos). *See* CM/ECF Doc. 153 ¶¶ 114-118. More specifically, while Debtor has made a limited production to 3 West 16th

20

Street, Debtor has failed to produce adequate documents and information referring to, related to,

and concerning the following (among others):

- The original operating agreement for FWM (which would indicate, among other things, how FWM was owned and operated prior to the fraudulent transfer of a portion of Debtor's interest in that entity to his brother in December 2011);

- Documents – including e-mails, financial statements, appraisals, etc. – related to Debtor's interests in various entities, including, without limitation: (a) 31 Bethune Street, LLC; (b) 20 Warren Street, LLC; (c) FREA; (d) FWM; (e) FWPG; (f) Flatiron-Williamsburg Property Group I, LLC; (g) Flatiron-Williamsburg Property Group II, LLC; (h) Bobcat Partners LLC; and (i) 290 Pratt Street LLC;

- Documents – including e-mails, financial statements, etc. – related to Debtor's $3,000,000 in loses reflected in Mr. Ancona's statement of financial affairs;

- Documents related to the amounts owed to Debtor's father, Jack Ancona, by Debtor for his interest in 20 Warren Street, LLC;

- Documents concerning copies of checks issued by Debtor's father, Jack Ancona, to Debtor and additional documentation supporting the contention that the checks were loans to be re-paid;

- Documents concerning 31 Bethune Street, LLC in addition to the already produced 2007 lease; and

- Documents concerning the source and use of capital gains income reflected in Mr. Ancona's 2012 and 2013 tax returns.

*See id.* ¶¶ 114-118.

72.    As discussed previously, Debtor also has not filed a plan of reorganization (or even

a disclosure statement).  He has not objected to any claims other than the one asserted on behalf

of 3 West 16th Street.  In short, he has had no problem availing himself of the *protections* afforded

to him under the Bankruptcy Code for approximately two-and-a-half years, but has nonetheless

shirked his *duties and responsibilities* thereunder, including the duty to produce relevant

information so that his true financial condition and the value of his bankruptcy estate can be

ascertained by 3 West 16th Street and other creditors.

21

73.    For all of the reasons set forth above, 3 West 16th Street has established cause to convert this Case to one under chapter 7.  Therefore, the burden should be shifted to Debtor under 11 U.S.C. § 1112(b)(2) to demonstrate that "unusual circumstances" exist, including, but not limited to, Debtor's "special ability to maximize value for creditors," which establish that conversion is not in the "best interests of creditors and the estate."  *See*, *e.g.*, *In re Rubio*, No. 09-75163 (AST), 2011 WL 124458, at *9-10 (Bankr. E.D.N.Y. Jan. 13, 2011); *see also Pichacho Hills Utility Co.*, 518 B.R. at 81 (noting that burden shifts to debtor to "'point to a reasonable plan of reorganization . . .' involving liquidation or rehabilitation" and to prove that debtor has "some special ability to maximize value for creditors").  However, as previously discussed, Debtor has done nothing toward confirmation of a plan and cannot establish that he can obtain confirmation of a plan within a reasonable time.[7]  Additionally, Debtor cannot establish any reasonable justification for the acts and omissions discussed herein which establish cause to convert or that he has "some special ability to maximize value for creditors."  *See id.*

74.    Thus, the Court, in its discretion, must determine whether dismissal or conversion is in "the best interests of creditors and the estate."  11 U.S.C. § 1112(b); *see also In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) (Morris, J.) ("Once cause is shown, the Court has broad discretion to either convert or dismiss the Chapter 11 case."); *In re Pleasant E. Associates*, 286 B.R. 509, 516 (Bankr. S.D.N.Y. 2002) (Gerber, J.) ("It is well established that determinations whether to dismiss or convert are within the discretion of the Court.").  Based upon the facts set forth above, this Case should be converted, rather than dismissed.  Despite Debtor's

---

[7]    Although the failure of a debtor to file a plan within the exclusivity period is not, standing alone, a ground for conversion, it should be noted that Debtor's exclusive period to file a chapter 11 plain in this Case expired on September 4, 2015.  *See* CM/ECF Doc. 131; *see also In re Just Plumbing & Heating Supply, Inc.*, No. 11-10151 (MG), 2011 WL 4962993, at *10 (Bankr. S.D.N.Y. Oct. 11, 2011) (Glenn, J.) (noting that "[i]f the Debtor is unable or unwilling to do so, or (since the Debtor's exclusivity period has expired) a creditor shows no interest in advancing a plan, the Court, in its discretion, may *sua sponte* convert the Debtor's case to a case under chapter 7").

failure to provide full and adequate disclosures, it appears to 3 West 16th Street that Debtor has substantial assets that may be liquidated and used to pay creditors. There is no need to reorganize this Debtor (an individual) and there is no reasonable likelihood of rehabilitation in this Case. Moreover, there are a number of pre-petition transfers that must be investigated and avoided, as well as at least one undisclosed post-petition transfer as evidenced by the purchase by Debtor's wife of a second home in Long Branch, New Jersey. Therefore, conversion of this Case to one under Chapter 7 is in the best interest of Debtor's creditors and the estate.

POINT TWO

**IF THE CASE IS NOT CONVERTED PURSUANT TO SECTION 1112(b), THE COURT SHOULD APPOINT A TRUSTEE PURSUANT TO SECTION 1104(a)**

75.    Even if the Court does not convert the Case from one under chapter 11 to one under chapter 7 (which it should), it should nonetheless appoint a chapter 11 trustee either because "cause" exists or because doing so would be in the best "interests of creditors, and equity security holders, and other interests of the estate." *See* 11 U.S.C. § 1104(a)(1)-(2).

**A.    Cause Exists for Appointment of a Chapter 11 Trustee Under Section 1104(a)(1)**

76.    While a corporate debtor, acting pursuant to bankruptcy law, might be able to replace dishonest or incompetent management, thereby decreasing the need for appointment of a chapter 11 trustee, Debtor in this Case is an individual and, therefore, cannot merely replace management. He is the one that is ultimately responsible for the conduct of his past, present, and future financial affairs.

77.    Here, however, Debtor and his counsel have apparently made the conscious choice to not sell assets or work on preparing and filing a plan for almost two-and-a-half years. In fact, as demonstrated above, Debtor and his counsel have accomplished virtually nothing in this Case to date. Their conduct has resulted only in substantial legal fees with no results, no progress

23

towards a potential resolution of the Case, and no meaningful benefit to the estate. Whether one characterizes this as "gross mismanagement" or "incompetence," the result remains the same – cause exists to appoint a chapter 11 trustee.

78.    Debtor's discretionary ability to take distributions from FREA (and, potentially, the other entities in which he holds ownership interests), without Bankruptcy Court approval, further supports the need for a trustee to replace the debtor-in-possession and either conduct a liquidation or begin legitimate reorganization efforts. To be sure, Debtor should not be permitted to hide behind the various entities in which he holds ownership interests or to deplete the assets of those entities with impunity, since doing so, in turn, decreases the value of Debtor's interests in those entities and diminishes the funds that could otherwise be used to pay creditors – including 3 West 16th Street – in connection with a liquidation or a reorganization plan. Instead, Debtor, as a fiduciary to all creditors, should be protecting and conserving property in his possession for the benefit of creditors and the estate. *See*, *e.g.*, *Ashley River Consulting, LLC*, 2015 WL 1540941, at *10 (noting that "misuse of assets and funds" is a factor to be considered in determining if cause exists for appointment of a chapter 11 trustee under Section 1104(a)(1)).

79.    As previously discussed, Debtor also has numerous "conflicts of interest" (particularly with respect to the above-referenced fraudulent transfers), which are clearly interfering with his ability to fulfill his fiduciary duties to creditors and further demonstrate that cause exists for the appointment of a Chapter 11 trustee. *See id.*; *Keeley & Grabanski Land Partnership*, 455 B.R. at 163.

80.    Moreover, as the Supreme Court aptly noted in its October 2013 Order in the Fraudulent Conveyance Action, "[b]adges of fraud exist" with respect to Debtor's pre-petition conduct. Any "instances of conduct found to establish fraud or dishonesty" may be deciding

24

factors in determining whether cause exists under 11 U.S.C. § 1104(a)(1).  *See Ashley River Consulting, LLC*, 2015 WL 1540941, at *10.

81.    Short of "fraud or dishonesty," Debtor has – at very least – shown a "lack of credibility" and an inability to deal evenhandedly with 3 West 16th Street as compared to "insiders" and Debtor's affiliated entities.  This, in turn, has led to a fair level of acrimony between Debtor and 3 West 16th Street and has further caused 3 West 16th Street to have a low level of "creditor confidence" in Debtor's ability to rehabilitate and confirm an appropriate plan without the oversight of a trustee.  *See id.*; *see also Keeley & Grabanski Land Partnership*, 455 B.R. at 163; *Marvel*, 140 F.3d at 474.

82.    Based on the foregoing, it is clear that cause exists, pursuant to Section 1104(a)(1), for at least the appointment of a chapter 11 trustee in this Case.  Accordingly, should the Court decline to convert the Case, it should nonetheless appoint a trustee.

**B.    Appointment of a Chapter 11 Trustee Would Be in the Best Interests of All Parties**

83.    As noted above, Section 1104(a)(2) "creates a flexible standard and allows the appointment of a trustee even when no 'cause' exists." *Ionosphere*, 113 B.R. at 168.  The "factors constituting a basis for appointing a trustee under [S]ection 1104(a)(2) are amorphous, diverse and necessarily involve a great deal of judicial discretion." *In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 527 n. 11 (Bankr. E.D.N.Y. 1989).

84.    In this Case, for all of the reasons set forth above, the factors to be considered by the Bankruptcy Court in determining whether to appoint a trustee weigh heavily in favor of such an appointment.  Among other things, Debtor's trustworthiness has been called into question and Debtor's past and present conduct suggest absolutely no progress towards reorganization.

85.    Moreover, it is clear that the benefits of appointing a chapter 11 trustee outweigh the potential costs.  Indeed, an appointed trustee will be able to turn this Case around and

25

streamline its administration by, among other things, identifying, recovering, and liquidating assets for the benefit of the estate.

86.    Failure to appoint a trustee, on the other hand, will result in more of the same conduct that both the Court and 3 West 16th Street have been forced to deal with since the Petition Date – namely, the squandering of estate assets through needless litigation and a lack of any progress towards a final resolution.

87.    For all of these reasons, even if the Court finds that no cause exists to convert this chapter 11 case to one under chapter 7 the Court, in its discretion, should find that appointment of a chapter 11 trustee would be in the best interests of all parties.

**CONCLUSION**

For the foregoing reasons, 3 West 16th Street respectfully requests that the Court grant its Motion and enter an Order: (i) converting the Case from one under chapter 11 to one under chapter 7 or, alternatively, appointing a chapter 11 trustee; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 26, 2016

Respectfully submitted,

McLAUGHLIN & STERN, LLP

By:   /s/ Matthew D. Sobolewski
       Matthew D. Sobolewski
       Chester R. Ostrowski

260 Madison Avenue
New York, New York 10016
Tel.:  (212) 448-1100
Fax:  (212) 448-0066
msobolewski@mclaughlinstern.com
costrowski@mclaughlinstern.com

*Attorneys for 3 West 16th Street LLC*