John G. McCarthy, Esq.
SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel: (212) 907-9700
Fax: (212) 907-9800
jmccarthy@sgrlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:                                                :
                                                      :    Chapter 7
    STEVEN J. ANCONA,                       :
                                                      :    Case No. 14-10532 (MKV)
                      Debtor.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**REPLY OF SMITH, GAMBRELL & RUSSELL, LLP TO
OBJECTION TO NOTICE OF PARTIAL TRANSFER OF CLAIM NO. 7**

**TO THE HONORABLE MARY KAY VYSKOCIL
UNITED STATES BANKRUPTCY JUDGE**

      Smith, Gambrell & Russell, LLP ("SGR"), an interested party by virtue of its statutory lien on the proposed distribution to creditor 3 West 16th Street, LLC ("3w16"), pursuant to the Court's order of October 25, 2019 (Dkt. No. 544), files this reply in response to the Objection Of 3 West 16th Street, LLC To Notice Of Partial Transfer Of Claim No. 7 For Security Pursuant To Fed. R. Bankr. P. 3001(e)(4) Filed By Smith, Gambrell & Russell, LLP (Dkt. No. 547) (the "Transfer Objection") and in support of Notice Of Partial Transfer Of Claim No. 7 For Security Pursuant To Fed. R. Bankr. P. 3001(e)(4) (Dkt. No. 519) ("SGR's Transfer Notice") and states as follows:

      1.     This Court should overrule the Transfer Objection and hold that $511,500.82 of Claim No. 7 has been transferred to SGR pursuant to Bankruptcy Rule

3001(e)(4) and Section 475 of the New York Judiciary Law.  That result is required by the facts that 3w16 does not dispute, facts as to which this Court may take judicial notice, and the doctrines of judicial estoppel, *res judicata* and collateral estoppel.

## SGR'S USE OF BANKRUPTCY RULE 3001(e)(4) WAS PROCEDURALLY PROPER

2.  Only the first sentence of Rule 3001(e)(4) applies to the filing of SGR's Transfer Notice.  That sentence provides:  "If a claim other than one based on a publicly traded note, bond, or debenture has been transferred for security after the proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee."  Fed. R. Bankr. P. 3001(e)(4).  SGR's Transfer Notice fully complies with the language of the rule as it contains "evidence of the terms of the transfer."  Moreover, nothing in this language can be read as either (a) limiting it to voluntary transfers or (b) requiring a agreement signed by the transferee.

3.  Additionally, the Advisory Committee Notes specifically addressing Rule 3001(e)(4) do not support the interpretation being asserted by 3w16.  They provide:

> Paragraphs (3) and (4) clarify the status of a claim transferred for the purpose of security. An assignee for security has been recognized as a rightful claimant in bankruptcy. Feder v. John Engelhorn & Sons, 202 F.2d 411 (2d Cir. 1953). An assignor's right to file a claim notwithstanding the assignment was sustained in In re R & L Engineering Co., 182 F. Supp. 317 (S.D. Cal. 1960).  Facilitation of the filing of proofs by both claimants as holders of interests in a single claim is consonant with equitable treatment of the parties and sound administration. See In re Latham Lithographic Corp., 107 F.2d 749 (2d Cir. 1939).
>
> Paragraphs (2) and (4) of subdivision (e) deal with the transfer of a claim after proof has been filed.  Evidence of the terms of the transfer required to be disclosed to the court will facilitate the court's determination of the appropriate order to be entered because of the transfer.

4. SGR's interpretation of the Rule is supported by a leading treatise on bankruptcy law, which notes: "Rule 3001(e) does not on its face provide for an involuntary transfer of a claim (i.e., by levy and execution). However, such an involuntary transfer would be governed by the rule." 9 *Collier on Bankruptcy* ¶ 3001.08[1][d] at 3001-29 (16th ed. 2019). At least one court in this Circuit has rejected the argument that Rule 3001(e)(4) is limited to voluntary transfers and held that "Rule 3001(e)(4) applies to involuntary as well as voluntary transfers." *In re Infiltrator Sys., Inc.*, 251 B.R. 773, 776 (Bankr. D. Conn. 2000). That court relied, in part, on the "persuasive reasoning" of the Maryland Bankruptcy Court in *NVLand, Inc. v. Vogel (In re Ocean Downs Racing Ass'n, Inc.)*, 164 B.R. 249, 256 (Bankr. D. Md. 1993) (holding that Rule 3001 applies to involuntary claims).

5. 3w16 has offered no case, rule or treatise to support its interpretation of Rule 3001(e)(4). Instead, it offers its narrow interpretation of a document found on the Court's website. The guidance document does not contain any statement concerning involuntary transfers and also does not state that the suggested alternatives are the only ways to comply with the requirements of Rule 3001(e)(4). Additionally, 3w16 has not cited to any legal authority that documents posted on a court's website somehow have the force of law. Moreover, Bankruptcy Rule 9029(a)(1) requires that local "rules governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction … are consistent with … these rules." 3w16's proposed interpretation of the guidance document is inconsistent with the language of Rule 3001(e)(4) which does not limit the type of evidence to be submitted or the type of transfer to which it applies. Moreover, the guidance document quotes from the Advisory Committee Notes to Rule

3001(e) generally and not specifically to Rule 3001(e)(4). In fact, the sentence of the Advisory Committee Notes following the quoted language states "[s]uch a disclosure will assist the court in dealing with evils that may arise out of post-bankruptcy traffic in claims against an estate." This matter does not involve trafficking in claims and as such the concerns discussed by the Advisory Committee are not present.

6. 3w16's request that this Court vacate SGR's Transfer Notice is also prohibited by Bankruptcy Rule 9029(a)(2). That rule provides that "[a] local rule imposing a requirement of form shall not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement." The only way to interpret the guidance document consistently with Rule 3001(e)(4) is that it offers advice only as to voluntary transfers.

7. Accordingly, SGR's Transfer Notice is procedurally proper and this Court should overrule 3w16's objections directed to the procedural mechanism utilized by SGR to enforce its statutory lien.

**THIS COURT HAS JURISDICTION TO DETERMINE ANY ISSUES ARISING FROM SGR'S CHARGING LIEN AND SGR'S TRANSFER NOTICE**

8. Judge Brozman's well-reasoned opinion in *In re Ralph Lauren Womenswear, Inc.*, 204 B.R. 363 (Bankr. S.D.N.Y. 1997), provides a perfect roadmap for this Court in addressing the substance of 3w16's Transfer Objection and SGR's Transfer Notice. The first substantive issue addressed by the *Ralph Lauren* decision is this Court's jurisdiction to resolve issues arising from a lien pursuant to Section 475 of the New York Judiciary Law (hereinafter "Section 475").[1]

---

[1] Section 475 has been amended since the *Ralph Lauren* decision to clarify that the lien applies to "any means of alternative dispute resolution" and "attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands

4

9. The *Ralph Lauren* Court held that the "determination of whether a portion of the funds promised to [creditor] in settlement of his proof of claim is payable to [law firm] is within this court's bankruptcy jurisdiction on at least two bases." *Ralph Lauren*, 204 B.R. at 374. The bases were core jurisdiction – "because it affects the administration of the estate and the adjustment of the debtor-creditor relationship" *id*. (citing 28 U.S.C. §§ 157(b)(2)(A) and (O)) – and "related to" jurisdiction. *Id*.

10. In *Ralph Lauren*, the proceeds of the settlement had already been paid to the law firm, which was holding the funds subject to its lien. *Ralph Lauren*, 204 B.R. at 371. As the funds were no longer controlled by the debtor's fiduciary, the Court recognized that its core jurisdiction was arguable. *Id*. at 374. In this case, however, the Court's core jurisdiction over this issue is clear because the proceeds are in the possession of the trustee, the dispute involves a transfer of claim and approval of the trustee's final report.

11. The *Ralph Lauren* Court found it had "related to" jurisdiction because "the settlement proceeds emanate directly from the estate in settlement of a disputed proof of claim over which I presided; [law firm's] services were performed solely in connection with the bankruptcy case; and the settlement … was the fruit of [law firm's] labor." Based on undisputed facts all of these connections exist here and more.

12. It is undisputed that SGR's Transfer Notice and the Transfer Objection involve proceeds that emanate from the Debtor's estate in this action. In fact, the proceeds are currently being held in the Debtor's estate by the Trustee.

---

they may come." *Compare Ralph Lauren*, 204 B.R. at 374 (quoting 1996 version of Section 475) *with* NY Jud. L. § 475 (McKinney's 2019).

13. It is undisputable that SGR performed legal services for 3w16 in this bankruptcy case. By reviewing the docket, this Court can take judicial notice of the fact that SGR was the only firm that appeared on behalf of 3w16 in this case until April 29, 2014. (McCarthy Dec., ¶¶ 3-7.) SGR has submitted herewith the declaration of John McCarthy and its invoices for work performed by its attorneys and paralegals in March and April 2014 and billed under the Ancona matter. Those invoices demonstrate work performed on behalf of 3w16 in this case, including attending the initial Section 341 Meeting of Creditors on April 9, 2014. (McCarthy Dec., Ex. B at 3.) 3w16 is judicially estopped from challenging those invoices by virtue of successfully seeking reimbursement from the Debtor's estate of those invoices through its Amended Proof of Claim.[2]

14. In SGR's Transfer Notice, it presented evidence that it assisted the McLaughlin & Stern "lawyers with respect to filing the Proof of Claim in April 2014." (Dkt. No. 519 at 4.) 3w16 does not dispute this fact, instead it merely notes that "SGR was not the attorney of record on the proof of claim submitted by [3w16]." (Dkt. No. 547, ¶ 23.) This undisputed fact about SGR's labor is further supported by the invoices submitted herewith by SGR. (McCarthy Dec., Ex. B.) SGR's labor in 2014 on 3w16's proof of claim indisputably lead to 3w16's expected recovery in 2019 of more than $3 million in this case.

15. In SGR's Transfer Notice, it presented evidence that some of SGR's services at issue were performed on behalf of 3w16 in *3 West 16th Street, LLC v. Steven*

---

[2] *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) ("exact criteria for invoking judicial estoppel will vary based on 'specific factual contexts,' and that 'courts have uniformly recognized that its purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"); *see also New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001).

*Ancona, 31 Bethune Street LLC and 20 Warren Street LLC*, Index No. 153301/2013 (the "Fraudulent Transfer Action"). (Dkt. No. 519 at 4.) 3w16 has not disputed this fact. As the Court knows from approving them, both settlements involved the non-debtor parties 31 Bethune Street LLC and 20 Warren Street LLC and at least the first settlement involved dismissal of the Fraudulent Transfer Action. (Dkt. No. 434, ¶¶ 26-27; *see also* Dkt. No. 519 at 4.)

16. SGR believes that it is undisputed that the Fraudulent Transfer Action was removed to this Court on January 11, 2018, but this Court can also take judicial notice of that fact based on a review of the docket in Adversary Proceeding No. 18-1001.

17. In SGR's Transfer Notice, it presented evidence that it had "successfully defended against a motion for summary judgment seeking to dismiss [the Fraudulent Transfer Action] by an order dated September 27, 2013." (Dkt. No. 519 at 4.) 3w16 does not dispute this fact. Without the fruits of SGR's labor in 2013, for which it has not been paid, the settlement with the non-debtor defendants would not have been possible in 2018 or 2019.

18. An additional basis exists for this Court's "related to" jurisdiction in this case that did not exist in *Ralph Lauren* is the undisputed fact that all of the amounts sought by SGR were included in 3w16's amended proof of claim. In SGR's Transfer Notice, it presented evidence that "[s]ome of the amounts included in the Proof of Claim are for the legal fees incurred by [3w16] with [SGR]." (Dkt. No. 519 at 5.) 3w16 does not dispute this fact anywhere in its Transfer Objection.

19. Based on all of the foregoing, it is clear that the issues presented by SGR's Transfer Notice and 3w16's Transfer Objection fall within the jurisdiction of this Court.

## THE COURT SHOULD OVERRULE 3w16'S OBJECTION AND SUSTAIN SGR'S CHARGING LIEN AND SGR'S TRANSFER NOTICE WITHOUT THE NEED FOR AN EVIDENTIARY HEARING

20. The substantive question is whether SGR has a lien pursuant to Section 475 that has attached to the funds in the trustee's hand which she proposes to pay to 3w16. The place to begin is the language of the state law providing for such lien:

> <u>Attorney's lien in action, special or other proceeding</u>. From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

<u>Identifiable Proceeds</u>

21. Turning to the merits of the Section 475 lien involved in *Ralph Lauren*, the first question is whether there are identifiable proceeds produced in any way by the law firm's labors. Here, the conclusion that the proposed distribution to 3w16 are identifiable proceeds of SGR's labor flows from the undisputed facts and from admissions of 3w16 in its Amended Proof of Claim as to which it is judicially estopped from challenging.

22. As discussed above, SGR's Transfer Notice avers that SGR provided assistance in filing the original proof of claim and in prosecuting the Fraudulent Transfer Action and neither fact is disputed by 3w16 in the Transfer Objection.

23. The Transfer Notice avers that the result obtained by SGR in the state court lawsuit with Debtor and his company, including the third-party action SGR commenced against the Debtor, "precluded Debtor for contesting liability as to the Proof of Claim in this Case." (Dkt. No. 519 at 3.) The Transfer Objection does not dispute this fact.

24. Additionally, the Amended Proof of Claim explains how the New York Appellate Division, First Department affirmed an order granting summary judgment for 3w16 against the Debtor. (Claim No. 7, pt. 2 at 1.) A copy of the First Department's opinion is attached to the proof of claim as Exhibit C and it demonstrates that Edward White and Michael Regan[3] were counsel of record for 3w16. (Claim No. 7, pt. 4 at 1.) This fact was not disputed in the Transfer Objection.

25. In the Amended Proof of Claim, 3w16 stated that it was "entitled to recover 100% of its attorneys' fees and other costs incurred in connection the enforcement of the Guaranty" provided by the Debtor. (Claim No. 7 (amended), ¶ 101.) In the very next sentence, it says "based on the Lease and the Guaranty, [3w16] asserts a claim for the attorneys' fees and costs paid and/or incurred with the law firms of Smith Gambrell & Russell LLP and Hartman & Craven LLP in an amount … [not] less than $1,523,793.37." (*Id*., ¶ 102.) It then cites to where the invoices were included in 3w16's document production. (*Id*.) In the Transfer Objection 3w16 essentially admits that all of the fees and costs sought by SGR in the Transfer Notice were included in the $1,523,793.37 amount set forth in the Amended Proof of Claim and related to

---

[3] Messrs. White and Regan were attorneys at Hartman & Craven, LLP ("H&C"). Effective October 1, 2012, all the attorneys at H&C (including these attorneys) joined SGR. (Dkt. 519 at 3 n.2.)

enforcement of the Guaranty. (Dkt. No. 547, ¶ 43 ("*approximately $1,200,000.00 has already been paid and collected by SGR*" (emphasis in original).)

26. 3w16 instead argues that because SGR was not involved in more recent efforts by successor counsel that also contributed to the proceeds subject to SGR's lien somehow the Section 475 lien is not effective. (Dkt. No. 547, ¶ 23.) It would not be much security to the attorneys in this State if a client could simply avoid Section 475 by hiring a new law firm or settling around the lawyer. Not surprisingly, that is not the law. *See, e.g., M.E. v. S.G.,* 124 Misc. 2d 851, 852, 478 N.Y.S.2d 539, 541 (Fam. Ct. 1984) ("When an attorney is discharged without cause or voluntarily withdraws for just cause, he is entitled to a lien. This lien takes two forms. The first, a common-law possessory lien, allows the attorney to keep a client's papers or assets until his fee is paid. The other, a statutory lien (§ 475 Judiciary Law), is a lien against monies recovered for a client by the attorney's efforts in litigation.").

27. 3w16 does not (and cannot) dispute that (a) the entire amount sought in the Transfer Notice related to enforcement of the Guaranty, (b) the entire amount to be paid to 3w16 from the Debtor's estate arises from enforcement of the Guaranty and (c) the fees arose from SGR's representation of it with respect to the original proof of claim, this Bankruptcy Case, the Fraudulent Transfer Case and the original lawsuit with the third-party action against the Debtor.

Fee Contract That Is Fair, Reasonable and Understood

28. Once again, the undisputed facts together with the application of the doctrines of judicial estoppel, *res judicata* and collateral estoppel demonstrate SGR's entitlement to an order recognizing the validity of the involuntary partial transfer.[4]

29. In *Ralph Lauren*, this Court noted that "[t]o establish a *prima facie* case of reasonableness, the attorney may rely on the 'well settled legal principle that an account stated may be established between an attorney and his client.' The theory is that '[i]t is not necessary to establish the reasonableness of the fee since the client's act of holding the statement without objection will be construed as acquiescence as to its correctness.'" 204 B.R. at 375 (citations omitted).

30. The Transfer Objection essentially admits that between July 30, 2012 and September 3, 2015, when SGR filed its Notice of Charging Lien, 3w16 simply held the invoices.[5] (Dkt. No. 547, Point Three, ¶¶ 38-43 (no assertion that 3w16 raised any timely objections to invoices).)

31. Not only did 3w16 hold the statements without objection as to their reasonableness, it affirmatively and successfully sought, in the amended proof of claim, to recover from the Debtor's estate those unpaid fees.

32. "Once an account stated is shown, the burden shifts to the client to show in what manner the account is incorrect." *Ralph Lauren*, 204 B.R. at 375. 3w16 has not come forward with anything demonstrating that the account is incorrect. Moreover, it is

---

[4] The entry of a judgment against 3w16 and in favor of SGR (Dkt. Nos. 539-2 & 541-1) means that 3w16 is also barred by the doctrines of res judicata and collateral estoppel from claiming that SGR committed malpractice. Reilly v. Reid, 45 N.Y.2d 24, 27, 379 N.E.2d 172, 174, 407 N.Y.S.2d 645, 647 (1978) ("It is blackletter law that a valid final judgment bars future actions between the same parties on the 'same cause of action'"); Pan American World Airways, Inc. v. Care Travel Co. (In re Pam Am Corp.), 166 B.R. 538, 545 (S.D.N.Y. 1993) ("It is well settled that under New York law, a judgment is final upon entry of judgment by the trial court, and is not affected by the pendency of an appeal.").

[5] At least one of the invoices was partially paid by 3w16. (Dkt. No. 519-5.)

judicially estopped from doing so by having successfully sought reimbursement from the Debtor the amounts in SGR's account stated.

\* \* \*

33. 3w16's other rambling and incoherent arguments are not really worthy of reply. Suffice it to say that 3w16 offers no legal authority to support either novel argument. As to 3w16's assertion that SGR's election to pursue its lien rights rather than file a plenary action was somehow a strategic mistake would mean that no secured creditor could ever rely on its lien rights to recover amounts due it.

WHEREFORE, SGR respectfully requests that the Court overrule the Transfer Objection and rule that a partial transfer to SGR of $511,500.82 from Claim No. 7 occurred and should be recorded by the Clerk on the claims register.

Dated:   New York, New York
         November 7, 2019

                                                  SMITH, GAMBRELL & RUSSELL, LLP

By: _____
     John G. McCarthy

1301 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 907-9700